**Leonard Rollon CRAWFORD–EL, Appellee,**

v.

**Patricia BRITTON and District of Columbia Department of Corrections, Appellants.**

**No. 91–7023.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 13, 1991.

Decided Dec. 27, 1991.

As Amended Dec. 27, 1991.

Rehearing Denied Feb. 14, 1992.

---

4. We have considered the Union's other arguments and find them to be without merit.

Edward E. Schwab, Asst. Corp. Counsel, Office of the Corp. Counsel, with whom John Payton, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Office of the Corp. Counsel, Washington, D.C., were on the brief, for appellants. Lutz Alexander Prager, Attorney, Office of the Corp. Counsel, Washington, D.C., also entered an appearance for appellants.

Daniel M. Schember, Washington, D.C., for appellee.

Before BUCKLEY and WILLIAMS, Circuit Judges, and ALAN D. LOURIE,[*] Circuit Judge, U.S. Court of Appeals for the Federal Circuit.

Opinion for the Court filed by Circuit Judge WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

Because of overcrowding in the District of Columbia prison system, plaintiff Leonard Rollon Crawford–El was shuffled about between its Lorton, Virginia facility and several other places of custody. He was first transferred in December 1988 to the Spokane County Jail in the state of Washington, then in the late summer and early fall of 1989 back to Lorton, and ultimately to a federal prison in Marianna, Florida, where he arrived in September 1989. Defendant Patricia Britton, a District of Columbia corrections officer, had charge of arranging his journeys. At the time, he owned three boxes containing clothes and papers relating to several pending lawsuits. At some point (by his account in August or September 1989, by hers in October 1989), Britton delivered the boxes to Crawford–El's brother-in-law, Jesse Carter, rather than simply shipping them to him at the next destination. Some time later Crawford–El's mother secured the boxes and shipped them to him in Florida, where they reached him in February 1990.

Crawford–El sued Britton for damages under 42 U.S.C. § 1983, claiming that her misdelivery of his legal papers to Carter was an intentional interference with his constitutional right of access to the courts. In support he alleged (among other things) various prior conversations between himself and Britton that suggested both her awareness that the boxes contained active legal files and her wish to do him harm. (We review the details below.)

In his brief here Crawford–El also argues that Britton retaliated against him for exercising his First Amendment rights. See Appellee's Brief at 14–19. The complaint makes no reference to this First Amendment claim, however, and the district court quite reasonably did not understand it as raising such a claim, see *Crawford–El v. Britton*, No. 89–3076, Order at 1, Joint Appendix ("J.A.") at 8,[1] so we do not consider it here. See *District of Columbia v. Air Florida, Inc.*, 750 F.2d 1077, 1078 (D.C.Cir.1984).

Britton moved for dismissal of the complaint and for summary judgment. She asserted a qualified immunity defense under *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), arguing that the plaintiff's claims do not make out a violation of any constitutional right "clearly established" at the time of her acts, *id.* at 818, 102 S.Ct. at 2738. She also argued that the plaintiff had failed to satisfy the "heightened pleading standard" that this circuit applies to damage actions against government officials. The district court denied the motion, *Crawford–El v. Britton*, No. 89–3076, Order (D.D.C. Dec. 21, 1990), and she appeals.

---

[*] Sitting by designation pursuant to 28 U.S.C. § 291(a).

1. The district court did read the complaint as claiming a violation of Crawford–El's due process rights under the Fifth Amendment. *Id.* This appears to be substantively indistinguishable from the access to courts claim, which courts have traced to several constitutional provisions, including the First Amendment, the due process clause, and the privileges and immunities clause. See, e.g., *Simmons v. Dickhaut*, 804 F.2d 182, 183 (1st Cir.1986); *Ryland v. Shapiro*, 708 F.2d 967, 971–72 (5th Cir.1983). The parties have not addressed any arguments here to a distinct due process claim, and we do not consider it.

We hold that the complaint has not satisfied our heightened pleading standard, but remand the case to the district court for repleading and reconsideration in light of our opinion.

## I.

Our jurisdiction is limited to whether at this stage Crawford–El's claim withstands the qualified immunity defense and satisfies the heightened pleading standard. A district court's rejection of a qualified immunity defense is immediately appealable under the "collateral order" exception to 28 U.S.C. § 1291's requirement of finality, to the extent it turns on an issue of law. *Mitchell v. Forsyth*, 472 U.S. 511, 524–30, 105 S.Ct. 2806, 2814–18, 86 L.Ed.2d 411 (1985). Otherwise trial court error could defeat much of the defense's purpose—to protect officials not only from liability but also from undue burdens of litigation. To determine the relevant facts, we look not only to the pleadings but to the entire record on appeal, viewed, as under Fed. R.Civ.P. 56, in the light most favorable to the party opposing summary judgment (except for the heightened pleading requirement discussed below). See, e.g., *Elliott v. Thomas*, 937 F.2d 338, 341–42 (7th Cir. 1991); *Unwin v. Campbell*, 863 F.2d 124, 130–33 (1st Cir.1988).

■ We do not apply the summary judgment model pure and simple, however, as the plaintiff has not yet secured discovery. *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738 (discovery should not be allowed until qualified immunity issue is resolved). Our heightened pleading requirement insists that, before discovery, plaintiffs suing government officers for damages set forth " 'nonconclusory allegations' that are 'sufficiently precise to put defendants on notice of the nature of the claim and enable them to prepare a response and, where appropriate, a summary judgment motion on qualified immunity grounds.' " *Andrews v.*

*Wilkins*, 934 F.2d 1267, 1269–70 (D.C.Cir. 1991) (quoting *Hobson v. Wilson*, 737 F.2d 1, 30 (D.C.Cir.1984)). Because application of the heightened pleading standard precedes discovery, the assumptions of ordinary summary judgment are (as we shall see) not fully applicable.

We note that some of Britton's arguments on appeal take the form of a simple denial—an "I didn't do it" defense. Immediate review of the district court's treatment of those issues is beyond the scope of *Mitchell*'s exception, which exists to supply early review of the *law* "clearly established" at the relevant time. See, e.g., *Elliott v. Thomas*, 937 F.2d at 341–42; *Kaminsky v. Rosenblum*, 929 F.2d 922, 925–26 (2d Cir.1991); *Ryan v. Burlington County*, 860 F.2d 1199, 1203 n. 8 (3d Cir. 1988); *Lion Boulos v. Wilson*, 834 F.2d 504, 509 (5th Cir.1987); *Velasquez v. Senko*, 813 F.2d 1509, 1511 (9th Cir.1987).

## II.

■ To determine whether Britton's qualified immunity defense prevails, we first consider what state of mind must have accompanied her misdelivery of Crawford–El's legal papers to render that action a constitutional tort (or, more precisely, what state of mind would a reasonable officer at the time of the alleged misdelivery have thought rendered it unconstitutional).[2] Although a purpose of the reasonable-officer standard is to enable a court to decide on qualified immunity without intrusive discovery, *Harlow*, 457 U.S. at 815–19, 102 S.Ct. at 2736–39, we have understood *Harlow* to allow inquiry into motive where a bad one could transform an official's otherwise reasonable conduct into a constitutional tort. See *Siegert v. Gilley*, 895 F.2d 797, 800–02 (D.C.Cir.1990), *aff'd on other grounds*, —— U.S. ——, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *Whitacre v. Davey*, 890 F.2d 1168, 1171 (D.C.Cir.1989); *Martin v. D.C. Metropolitan Police Department*, 812 F.2d 1425, 1431 (D.C.Cir.1987); *Halpe-*

---

**2.** Crawford–El associates the misdelivery with his transfer from Lorton to another prison in Petersburg, Virginia on the way to Florida in August or September 1989, whereas Britton states she delivered the boxes to Carter on Octo-

ber 5, 1989. See Affidavit of Patricia Britton at 3 (Mar. 26, 1990), J.A. at 55. We are aware of no cases between August and October 1989 that would change our analysis.

*rin v. Kissinger,* 807 F.2d 180, 185–87 (D.C.Cir.1986); *Hobson v. Wilson,* 737 F.2d at 29–31; compare *Penthouse International, Ltd. v. Meese,* 939 F.2d 1011, 1017 (D.C.Cir.1991) (no state of mind could make the specified conduct unconstitutional).

Well before defendant's activities in 1989 the Supreme Court decided that prisoners have a general right of access to law libraries or legal assistance. See *Bounds v. Smith,* 430 U.S. 817, 821–25, 97 S.Ct. 1491, 1494–96, 52 L.Ed.2d 72 (1977); *Wolff v. McDonnell,* 418 U.S. 539, 579, 94 S.Ct. 2963, 2986, 41 L.Ed.2d 935 (1974). But it doesn't follow that any interruption in Crawford–El's access to his papers was unconstitutional. Prison officials have considerable discretion to implement policies for the administration of correctional facilities and are free to formulate rules (including regulation of inmates' property) that impinge on fundamental rights so long as they are " 'reasonably related' to legitimate penological objectives". *Turner v. Safley,* 482 U.S. 78, 87, 107 S.Ct. 2254, 2260–61, 96 L.Ed.2d 64 (1987). At a minimum, if Britton's delivery of the boxes to Carter was a reasonable means of securing their safe transfer, it would not violate his *Bounds* right.[3]

Plaintiff argues that any "unreasonable" (by which he appears to mean "negligent") withholding or misdelivery of property would violate the *Bounds* right if the parcel contains active legal files. He suggests that prison officials in Britton's position are aware that many prisoners have active legal papers, so that there should be no need to offer specific evidence of awareness of a parcel's contents. Appellee's Brief at 19–20 n. 8.

Though Britton's position is more obscure, she implicitly and correctly recognizes that it was clear by 1989 that an officer who interfered with the transmission of an inmate's legal papers for the purpose of thwarting the inmate's litigation violated his constitutional right of access to the courts. See, e.g., *Simmons v. Dickhaut,* 804 F.2d 182, 183 (1st Cir.1986); *Wright v. Newsome,* 795 F.2d 964, 968 (11th Cir.1986); *Carter v. Hutto,* 781 F.2d 1028, 1031–32 (4th Cir.1986); *Tyler v. "Ron" Deputy Sheriff,* 574 F.2d 427, 429 (8th Cir.1978); cf. *Jackson v. Procunier,* 789 F.2d 307, 310–11 (5th Cir.1986) (allegation that prison officials deliberately held up inmate's mailing of *in forma pauperis* petition stated claim for constitutional violation); *Washington v. James,* 782 F.2d 1134, 1138–39 (2d Cir.1986) (interference with legal mail states claim for violation of right of access).[4] Under this specific intent standard, Britton's act would constitute a violation of Crawford–El's *Bounds* right only if she knew his property contained legal papers relevant to pending litigation *and* she diverted the property with the purpose of interfering with his litigation, or at least with deliberate indifference to such interference. (Hereafter we use "intent to interfere" as encompassing deliberate indifference.)

It cannot, however, be said that anything like Crawford–El's proposed negligence standard was clearly established in 1989 (or now, for that matter). Perhaps the broadest ruling is *Jackson v. Procunier,* which held a *Bounds* claim would be shown if "mail officers *deliberately* held up [the plaintiff's] mail when they *should reasonably have known* that the delay would deprive him of his right of access to the courts". 789 F.2d at 311 (emphasis added). The delayed envelope stated that it contained legal materials that had to be in court by a specific date one week later, *id.* at 308, and the resulting delay cost the

---

**3.** At worst, the act might constitute a common law conversion, *Fotos v. Firemen's Ins. Co.,* 533 A.2d 1264, 1267 (D.C.1987), but that is a separate question that has no direct bearing on whether the act violated Crawford–El's *Bounds* right. We reject his contention to the contrary. See Appellee's Brief at 22.

**4.** Our circuit has not spoken to this issue. However, the unanimity among those circuits that

have done so, together with the fact that "[i]t follows logically [from *Bounds* ] that the allegation of intentional violation of the right of access to the courts states a cause of action under § 1983", *Simmons v. Dickhaut,* 804 F.2d at 183, suggests that a reasonable official would know that intentional deprivation of the *Bounds* right violates the Constitution.

prisoner dismissal of his appeal. Thus, the court was presumably holding that it was enough to allege knowing delay of legal papers, with awareness of some (at least nontrivial) *likelihood* that the delay would defeat the inmate's claim. The other cases appear similarly to require either an intent to thwart the prisoner's access to courts, or at a minimum deliberate or reckless indifference to a foreseeable disruptive effect. See, e.g., *Simmons v. Dickhaut,* 804 F.2d at 184 (inmate claimed prison officials withheld legal material from property returned to him, although he three times requested and identified it); *Carter v. Hutto,* 781 F.2d at 1031–32 (inmate claimed that prison officials deliberately seized and destroyed handwritten notes of his trial, the basis of his habeas claim); *Patterson v. Mintzes,* 717 F.2d 284, 288–89 (6th Cir.1983) (inmate denied access to his transcripts and legal papers necessary for court appearance despite several specific requests identifying his critical dependence on the documents). Thus, while the cases "clearly establish" that Crawford–El had a constitutional right against any official who interfered with his access to active legal files with intent to impair that access, they do not establish the broader right that he claims.

Quite apart from the issue of qualified immunity, we doubt if an act such as Britton's could violate the *Bounds* right unless done with an intent to interfere with litigation (or, to repeat, with deliberate indifference to such interference). If it could, a prisoner could easily transform almost any negligent delay in the transfer of his property (which would not otherwise violate the Constitution, see *Daniels v. Williams,* 474 U.S. 327, 336, 106 S.Ct. 662, 667, 88 L.Ed.2d 662 (1986)) into a constitutional tort if the property contained active litigation papers. Defendant's theory, that officials are generally aware that prisoners are frequently engaged in litigation and should be liable for any negligent delay, could extend (for example) to any mail carrier handling prison mail and negligently delaying its delivery.

Accordingly, to withstand Britton's motion to dismiss, Crawford–El must have made specific nonconclusory allegations showing that Britton knew his property contained legal materials relating to pending cases *and* that she diverted his property with the intention of interfering with his litigation.

■ On the first point, Crawford–El claims to have informed Britton that his boxes contained legal papers:

> On Friday August 18, 1989, I spoke to defendant Patricia Britton at the Western Missouri Correctional Center [while en route from Washington State back to Lorton]. D.C. offenders Danny Phillips and James Neal and I were talking to Britton and each informed her that our legal material pertaining to current cases was in our property and was necessary in order for us to seek redress from the courts.

Affidavit of Leonard Crawford–El at 1 (May 3, 1990), J.A. at 73; see also Complaint at 2, J.A. at 28.

Crawford–El also alleges specific facts suggesting an intention to interfere with his pursuit of his legal claims. *First,* he has provided evidence of Britton's general hostility to him. He alleges [5] that after he was quoted by reporters in an April 20, 1986 *Washington Post* article criticizing conditions at Lorton, Britton rebuked him for cooperating with the reporters and "told plaintiff that so long as he was incarcerated she was going to do everything she had to make it as hard for him as possible as a result of his having met and spoke [sic] with the reporters and for allegedly embarassing [sic] her before her coworkers thru the article." Amended Complaint at 2 (Sept. 6, 1990), J.A. at 16.

Crawford–El also states that after his transfer to Spokane he was quoted several times in a December 17, 1989 [sic; presumably *1988*] *Washington Post* article about the transfer, and thereafter "was locked down and officials there informed him that

---

5. The facts are described below according to Crawford–El's allegations and offers of proof; for the purposes of this appeal we do not have

jurisdiction to consider Britton's denials of certain allegations, for the reasons set forth in Part I.

Defendant Britton had told them Plaintiff was a 'Troublemaker'." *Id.* This adds only a very little; we suspect that even prison officials free of hostility toward Crawford–El might regard "troublemaker" as an apt moniker.

Crawford–El's final claim of general hostility is that he learned (from an unidentified source) that Britton, after conveying his property to Carter, had told Carter that Crawford–El "should be happy she did not throw it in the trash". Complaint at 3, J.A. at 29. This contention is undermined by Crawford–El's acknowledgement of Carter's statement that Britton, when asking him to pick up the property, had told him she was afraid it might otherwise be lost. *Id.*

█ Two of these assertions appear to be pure hearsay—Crawford–El's statements that "officials" at Spokane told him that Britton told them Crawford–El was a "troublemaker" and that someone (Carter?) told him that Britton had said Crawford–El was lucky she did not throw his property in the trash. Normally such hearsay would not be enough to raise an issue of fact for summary judgment purposes. See Fed. R.Civ.P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."); see also 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2738, at 470–74 (2d ed. 1983). Britton may have waived the objection, see *id.* at 507–09; *In re Teltronics Services, Inc.*, 762 F.2d 185, 192 (2d Cir. 1985), but the more important point is that there has been no opportunity for discovery. Accordingly the heightened pleading requirement demands only that plaintiff "relat[e] the pertinent information that is already in his possession." *Hunter v. District of Columbia*, 943 F.2d 69, 76 (D.C.Cir.1991). Inadmissible hearsay reports of the defendant's *specific* statements indicating malicious intent can satisfy that standard. Counsel involved in the

drafting of such reports will doubtless be alert to the possible Rule 11 hazards.

*Second,* Crawford–El bolsters the impact of Britton's statements with a claim of disparate treatment: He alleges that he and other prisoners who had complained about being videotaped during the transfer were not sent their property, whereas others being transferred were sent theirs. See Affidavit of Leonard Crawford–El at 4–5, J.A. at 76–77 (asserting that D.C. inmates who filed notices of intent to sue over the videotaping and/or were named as plaintiffs in the lawsuit over the videotaping, "experienced the same intentional deprivations as plaintiff at the hands of Britton who is also a defendant" in that case, whereas "D.C. offender John McNeil and others [being transferred from Washington State] property was [sic] in R + D in Lorton and given to them"); see also Attachments to Appellee's Brief at 1–14, J.A. at 82–87 (copy of complaint in *Alton Best v. District of Columbia,* lawsuit over videotaping); Attachments to Appellee's Brief at 38–45 (notices of intent to sue by Crawford–El, James Neal, Danny Phillips, and Kenneth Ward).

*Third,* Crawford–El states that prison authorities would not permit him to receive property mailed outside prison channels, even by a family member. Complaint at 4, J.A. at 30. Thus, when his mother finally mailed him his property, he was initially denied access to the materials and secured them only by filing an administrative complaint with the Marianna, Florida warden. Amended Complaint at 3, J.A. at 17. If Britton was aware of the practice, this would supply a reason why she could have believed that delivery to Carter might thwart Crawford–El's litigation efforts.

Taking Crawford–El's allegations and supporting evidence of unconstitutional motive as a whole, we find them "specific and concrete enough to enable [Britton] to prepare a response, and … a motion for summary judgment based on qualified immunity." *Whitacre v. Davey,* 890 F.2d at 1171. The allegations in *Martin v. D.C. Metropolitan Police Department,* which we rejected, 812 F.2d at 1435, were by compari-

son quite vague. The plaintiff claimed that he had been arrested for burglary in retaliation for a civil lawsuit that he pressed against certain officers who had beaten him with nightsticks in an episode captured on videotape and broadcast on the local news. His arrest was by *other* police officers, and against them plaintiff could only claim that they had reviewed the videotape of the beating; that he was the only person identified and prosecuted as a result; that defendants worked closely with the prosecutor on the case; and that an unusually large number of officers arrested him. *Id.* Here Crawford–El has identified specific statements by Britton to him and others showing awareness that his boxes contained litigation papers and that she was hostile; and he has identified specific persons also involved in documented legal conflict with Britton and (according to him) subjected to adverse treatment of their property, in contrast with others. For summary judgment purposes Britton should be able to meet these assertions with specific affidavits.

Although Crawford–El has adequately specified evidence of Britton's intent, he has offered none showing that Britton's actions actually deprived him of his right of access to courts. While our past decisions have mainly focused on the need for specifics bearing on the intent element of a constitutional damage action, *Hunter v. District of Columbia* makes clear that the policy behind the qualified immunity defense—concern over "the social cost of distracting government officials with litigation", 943 F.2d at 75—requires that the complaint as a whole satisfy the heightened pleading standard.

Some of Crawford–El's damage allegations relate to impacts on his litigation—assertions that the delay "made it impossible for him to proceed in an organized manner," Amended Complaint at 4, J.A. at 18, that he was "prevented from assisting his attorneys ... in that he was not able to refer to his records and notes", *id.*, that his "filing of several small claims in D.C. was delayed unnecessarily", *id.*, and that the defendant's acts "were the proximal [sic] cause of the dismissal of one pro se case

[with a specific title]". Except for the one reference to dismissal of a case, unsupported by any detail, none of these shows actual deprivation of access to the courts.

■ We agree with those circuits holding that where a plaintiff seeks relief for an isolated episode of interference with his right of access to a law library, legal materials, or legal assistance, he must allege an actual injury to his litigation. Thus in *Chandler v. Baird,* 926 F.2d 1057, 1063 (11th Cir.1991), the court held that actual prejudice was necessary where the "alleged deprivations are of a minor and short-lived nature and do not implicate general policies." See also *Sowell v. Vose,* 941 F.2d 32, 35 (1st Cir.1991) (drawing a similar line, and noting that the only injury from certain delays was plaintiff's need to seek extensions of filing deadlines); *Sands v. Lewis,* 886 F.2d 1166, 1169–71 (9th Cir. 1989) (drawing distinction between an "absolute" deprivation of access to legal materials and a "conditional restriction", for which actual injury must be shown); *Peterkin v. Jeffes,* 855 F.2d 1021, 1039–42 (3d Cir.1988); *Hossman v. Spradlin,* 812 F.2d 1019, 1022 (7th Cir.1987); *Holloway v. Dobbs,* 715 F.2d 390, 392 (8th Cir.1983); cf. *Washington v. James,* 782 F.2d at 1140–41 (Cardamone, J., dissenting) (rejecting majority's view that complaint alleged *regular* interference with plaintiff's legal correspondence, dissenter would have dismissed the claim for want of *"actual denial* of access to federal courts") (emphasis in original); *Mann v. Smith,* 796 F.2d 79, 83–84 & n. 5 (5th Cir.1986) (requiring actual injury where alleged violation took form of inadequate " 'checkout' system for law books"). This requirement flows from the general principle that some showing of injury is a prerequisite to a constitutional tort action. See, e.g., *Butz v. Economou,* 438 U.S. 478, 504, 98 S.Ct. 2894, 2910, 57 L.Ed.2d 895 (1978) ("the decision in *Bivens* [the federal analog of § 1983] established that a citizen *suffering a compensable injury* to a constitutionally protected interest could invoke the general federal-question jurisdiction of the district courts to obtain an award of monetary damages against the responsible

federal official") (emphasis added); *Ingraham v. Wright*, 430 U.S. 651, 674, 97 S.Ct. 1401, 1414, 51 L.Ed.2d 711 (1977) ("There is, of course, a *de minimis* level of imposition with which the Constitution is not concerned."); *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir.1982) ("even in the field of constitutional torts *de minimis non curat lex* .... A tort to be actionable requires injury.").

The only concrete (legal) injury cited by Crawford–El is the dismissal of one *pro se* action filed in the federal district court in Maryland. See Complaint at 4, J.A. at 18; Opposition to Defendant's Motion for Reconsideration at 6 (May 21, 1990), J.A. at 99. But that action was dismissed on May 4, 1990, well after Crawford–El had recovered his legal materials in early February 1990; indeed, the district judge had extended the deadlines for discovery and summary judgment motions to March 27, 1990, and April 26, 1990, respectively. See J.A. at 109–10. Thus, like the plaintiff in *Sowell v. Vose* who secured extensions to accommodate access delays wrongly inflicted upon him, Crawford–El has failed to link his deprivation to any adverse litigation effect.

■ Crawford–El has also alleged losses completely peripheral to his litigation—the cost of underwear and shoes during the eight months he was denied access to the clothes in his property; the cost of mailing the boxes from the District to the Florida facility; and emotional distress. See Amended Complaint at 4, J.A. at 18. These do not help show a violation of the *Bounds* right; the character of that right defines the injury requirement. If there is no deni-

al of access to the courts, the presence of legal records in the diverted boxes cannot turn a garden-variety property deprivation into a *Bounds* claim.

### III.

■ Although we hold that Crawford–El's complaint does not satisfy our heightened pleading standard, we remand the case to the district court for repleading. On remand Crawford–El should be permitted to add, if he can, non-conclusory allegations that would show the actual injury necessary to support his *Bounds* claim. Since the proceedings in district court, our *Hunter* decision has made clear the scope of the heightened pleading requirement; as plaintiff prevailed in district court and his pleadings were *pro se*, the case for a remand to comply with those requirements is more compelling than in *Hunter* itself. Permission to file additional amendments to the complaint, such as to raise plaintiff's new First Amendment theory, lies in the sound discretion of the district court. See *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). We note, however, that even First Amendment claims appear to be subject to a *de minimis* rule. See *Bart v. Telford*, 677 F.2d at 625.

*Reversed and remanded.*