1. Even though the District of Columbia was previously dismissed as a defendant, the District is now properly named as a defendant in this case.

 After the District was dismissed as a defendant on May 10, 1990 (Order of May 10, 1990, at ¶ 2), plaintiff received court-appointed counsel and moved for leave to file a third amended complaint, which named the District as a defendant. In its opposition to this motion, the District did not raise a law of the case defense to its reinstatement as a defendant, nor did it answer Crawford–El's argument that Fed.R.Civ.Proc. 15(a) allows the court to reinstate the District as a defendant. Crawford–El's motion to file a third amended complaint was granted. (Order of September 30, 1991.)

### Leonard Rollon CRAWFORD–EL, Plaintiff,

### v.

### Patricia BRITTON and District of Columbia,[1] Defendants.

### Civ. No. 89–3076 (RCL).

United States District Court,
District of Columbia.

Feb. 15, 1994.

Similarly, when Crawford–El again named the District as a defendant in his fourth amended complaint, the District failed to oppose it on law of the case grounds (or on any other grounds, for that matter). The court granted Crawford–El's unopposed motion for leave to file a fourth amended complaint on May 5, 1992.

Again, in its motion to dismiss Crawford–El's fourth amended complaint, the District still did not raise a law of the case defense.

All in all, the District has had three chances to protest its reinstatement as a defendant in this case. If the District ever possessed a law of the case defense to reinstatement as a defendant, by now the District has thrice waived it.

Daniel McCrea Schember, Gaffney & Schember, Washington, DC, for plaintiff.

Kenneth Marty, Office of Corp. Counsel, D.C., Washington, DC, for defendants.

### MEMORANDUM OPINION

LAMBERTH, District Judge.

This case comes before this court on defendants' motion to dismiss plaintiff's fourth amended complaint. Having considered defendants' motion and plaintiff's opposition, this court hereby dismisses plaintiff's fourth amended complaint.

## I. Background

Plaintiff Leonard Rollon Crawford–El is a District of Columbia prisoner who was transferred out of the District's prisons in 1988 and shuffled from facility to facility due to overcrowding in the District's prison system. At the start of one of those facility-to-facility transfers—a two-month-long move from the McNeil Island Correctional Center in Steilcoom, Washington on July 28, 1989, to a federal correctional institution in Marianna, Florida, on September 22, 1989, via correctional facilities in Cameron, Missouri; Lorton, Virginia; and Petersburg, Virginia—Crawford–El had to surrender his property to prison officials for shipping. His property consisted of his papers in federal *pro se* and *in forma pauperis* civil actions, papers recording facts relevant to contemplated federal actions for damages, and a photograph he believed necessary for a post-conviction motion in his criminal case, as well as some clothing and other articles. (Fourth Amended Complaint, at ¶ 44.)

The District of Columbia corrections official who was responsible for shipping Crawford–El's property to him during this transfer was defendant Patricia Britton. She directed Washington state authorities to ship his property (and the property of all other prisoners who were being similarly trans-

ferred) to her in Washington, D.C. (Pl.'s Opp'n to Motion to Dismiss, at 2.) She received his property in mid-September, 1993. (Defs.' Motion to Dismiss, at 5.) Yet instead of shipping his property to him in Marianna, Britton asked Crawford–El's brother-in-law, Department of Corrections employee Jesse Carter to pick up Crawford–El's property. (Crawford–El never authorized such a release.) Carter picked up the property, but at Crawford–El's request, he attempted to return it to Britton so that it could be shipped to Crawford–El through prison channels. (Fourth Amended Complaint, at ¶ 29.) Britton refused to accept the property from Carter. Carter then delivered the property to Crawford–El's mother, who mailed it to Crawford–El at his request and at his expense on January 24, 1990. (Defs.' Motion to Dismiss, at 6; Pl.'s Opp'n to Motion to Dismiss, at 7.)

At first, Marianna officials would not permit Crawford–El to receive his boxes because they had been mailed to him outside prison channels. (Pl.'s Opp'n to Motion to Dismiss, at 7.) Crawford–El had to submit an administrative complaint in order to get his property back. In February 1990, he finally did receive his property, about six months after he had surrendered his property to prison officials in Washington state. (Pl.'s Opp'n to Motion to Dismiss, at 8.)

As a result of defendants' actions, he alleges, he had to incur the first class mail delivery costs of shipping his property from the District of Columbia to Marianna, Florida; the cost of replacing underwear, tennis shoes, soft shoes, and other items in his delayed packages; and suffered mental distress. (Fourth Amended Complaint, at ¶ 45.) For these injuries, Crawford–El seeks declaratory, injunctive, and monetary relief.

In response, defendants have filed a motion to dismiss. The issue before this court now is whether to grant this dispositive motion.

## II. Court of Appeals' Decision

The United States Court of Appeals for the District of Columbia has provided direct guidance for the resolution of this motion to dismiss. In this case's first phase of life, Britton filed a motion to dismiss plaintiff's complaint,[2] which alleged that Britton had intentionally interfered with Crawford–El's constitutional right of access to the courts. On December 21, 1990, this court denied that motion to dismiss. She appealed and won a reversal and a remand to this court for repleading. See Crawford–El v. Britton, 951 F.2d 1314 (D.C.Cir.1991), cert. denied, —— U.S. ——, 113 S.Ct. 62, 121 L.Ed.2d 29 (1992).[3]

The Court of Appeals held that Crawford–El's complaint did not satisfy the heightened pleading standard for damages suits against government officials alleged to have acted on unconstitutional motives. To survive the motion to dismiss, Crawford–El had to satisfy the heightened pleading standard by making "specific nonconclusory allegations showing that Britton knew his property contained legal materials relating to pending cases *and* that she diverted his property with the intention of interfering with his litigation." Crawford–El, 951 F.2d at 1319 (emphasis in original).[4] The complaint that the Court of Appeals reviewed met this heightened pleading standard. See Crawford–El, 951 F.2d at 1320.

However, because Crawford–El did not offer evidence of actual injury, the Court of Appeals held that his complaint did not withstand the motion to dismiss. Crawford–El

---

**2.** The complaint then at issue was plaintiff's second amended complaint. The newly amended complaint at issue in the present case is plaintiff's fourth.

**3.** The District of Columbia was not a party to the appeal, although the District of Columbia Department of Corrections was a co-defendant with Britton.

**4.** The Court of Appeals did not expressly state that it was requiring Crawford–El to meet the

heightened pleading standard with direct, as opposed to merely circumstantial, evidence. See Crawford–El, 951 F.2d at 1317, 1320. However, the Crawford–El court could not have intended to exempt Crawford–El uniquely from the heightened pleading standard rule. See Kimberlin v. Quinlan, 6 F.3d 789, 795 n. 12 (1993). For the purposes of applying the heightened pleading standard to this case on remand, this court will assume that the heightened pleading standard's direct evidence requirement as stated most recently in Kimberlin applies to this case.

alleged that the delay in receiving his property disorganized his legal proceedings, prevented him from helping his attorneys because he did not have his records and notes, and delayed his filing of several small claims, but the Court of Appeals held that these were not sufficiently concrete injuries. His only concrete injury—his allegation that the delay caused the dismissal of one of his claims—was found not to flow from Britton's acts. The Court of Appeals held that his other claimed losses—the cost of clothing to replace what was in the delayed packages, the cost of shipping his property to Florida, and the emotional distress—were not caused by a deprivation of his right of access to the courts.

The Court of Appeals remanded this case for repleading, offering Crawford–El a second chance to state an injury to support his claim of denial of access to the courts. *Crawford–El*, 951 F.2d at 1322.

The question now before this court is whether Crawford–El's fourth amended complaint, pled by very able court-appointed counsel, survives defendants' motion to dismiss. Specifically, this court must determine, first, whether on remand Crawford–El has supported his court access claim—the sole claim reviewed by the Court of Appeals—with a showing of injury; and second, whether the four new claims that Crawford–El has raised in this fourth amended complaint withstand defendants' motion to dismiss.

### III. Constitutional Right of Court Access

In his fourth amended complaint, Crawford–El pleads again the three injuries he alleged in the complaint the Court of Appeals reviewed. He restates his two pecuniary injuries—the cost of shipping his packages to himself, and the cost of replacing some clothing—and elaborates upon a third injury of "mental distress" caused by "the stressful communications with officials and family members, the deprivation of pictures of loved ones, worry that his property might permanently or indefinitely be withheld from him,

worry that his pending legal proceedings would be prejudiced, and worry that his pursuit of the administrative complaint in FCI Marianna [to be allowed to receive the packages as mailed from his mother] would adversely affect his relationships with FCI Marianna staff." (Fourth Amended Complaint, at ¶ 45.)

The Court of Appeals has explicitly held that these three injuries do not flow from any deprivation of Crawford–El's court access right (*see Crawford–El*, 951 F.2d at 1322), and that they do not support a claim seeking relief "for an isolated episode of interference with [the] right of access to ... legal materials." *Crawford–El*, 951 F.2d at 1321.

Yet instead of alleging merely a single, isolated episode of a violation of the right to court access, Crawford–El's fourth amended complaint alleges that defendants *systematically* deprived him and prisoners like him of their of legal materials out of pervasive ignorance or indifference to court access rights. (Pl.s' Opp'n to Motion to Dismiss, at 21.) He argues that an allegation of a failure of the entire system need not be supported by a showing of actual injury. The systemic failure itself is injury enough. *See, e.g., Chandler v. Baird*, 926 F.2d 1057, 1063 (11th Cir.1991); *Sowell v. Vose*, 941 F.2d 32, 34 (1st Cir.1991).

To avoid the usual requirement of demonstrating actual injury, Crawford–El must allege systemic deprivation, challenging, for example, "the basic adequacy of materials and legal assistance made available to all or subgroups of the prison population.... [or] conditions [that] obviously go to the heart of any meaningful access to libraries, counsel, or courts." *Chandler*, 926 F.2d at 1063. Deprivations "of a minor and short-lived nature" that do not "implicate general policies" are not enough. *Id.* at 1063.

■ However, Crawford–El's allegations of injury simply do not show that defendants habitually frustrated prisoners' court access rights.[5] His strongest allegation of systemic

---

5. It is unclear whether Crawford–El's injury allegations must meet the ordinary pleading standard or the heightened pleading standard.

The *Crawford–El* court, on the threshold of discussing whether plaintiff had met the injury requirement, stated that "[w]hile our past deci-

injury states that defendants have a policy of seizing prisoner property during prisoner transfers without regard for whether such property contains active legal files,[6] pursuant to which he will soon suffer another lengthy separation from his legal materials when he is returned to federal custody upon termination of this case.[7]

Yet even this allegation does not implicate a general policy that deprives prisoners from access to the courts. Most prisoners were not separated from their materials (legal or otherwise) for very long; as Crawford–El concedes, other prisoners had received their property by August or September 1989, shortly after they arrived at Lorton and only one or two months after separation from their property in Washington state. (Fourth Amended Complaint, at ¶¶ 25, 26.)

Further, although Crawford–El was separated from his materials longer than most, even that separation proved to be a minor and short-lived impediment to court access. He does not allege that he was totally deprived of legal materials. Presumably, he was able to use prison legal libraries and other legal resources while he waited for his

materials to be returned to him. Further, his ability to request extensions of time from the courts handling his cases prevented the separation from his legal documents from becoming a serious impediment to his access to the courts.

His weaker allegations of systemic injury are simply off the mark. In his opposition to the motion to dismiss, Crawford–El cites several paragraphs of his fourth amended complaint in support of a showing of systemic injury. Yet none of them shows that he or others like him were systemically denied access to the courts or to legal materials. For example, three of the cited allegations show Britton's disdain for Crawford–El and her cavalier attitude toward her duties, but they do not indicate that he or other prisoners were actually deprived of materials necessary for pursuing legal matters.[8] Similarly unpersuasive is his allegation that during the transfer from Cameron, Missouri, to Lorton, Britton lost a separate parcel of Crawford–El's full of non-legal documents: his canteen items, a letter with pictures, and stamps. (Fourth Amended Complaint, at ¶¶ 21–23.) That loss did not deprive him of legal materi-

---

sions have mainly focused on the need for specifics bearing on the intent element of a constitutional damage action ... [it is] clear that the policy behind the qualified immunity defense—concern over 'the social cost of distracting government officials with litigation'—requires that the complaint as a whole satisfy the heightened pleading standard." *Crawford–El*, 951 F.2d at 1321 (citations omitted). The court concluded that Crawford–El had not offered "adequately specified evidence" of injury. *Id.*

However, the authority of the *Crawford–El* opinion on the heightened pleading standard has been called into question by a case that applies the heightened pleading standard only to allegations of unconstitutional intent. *See Kimberlin*, 6 F.3d at 795 n. 12.

Nevertheless, for the purposes of this case, this debate on the scope of the heightened pleading standard is academic. Crawford–El's allegations of systemic injury would be insufficient to support his court access claim whether this court applied the ordinary pleading standard or the heightened pleading standard. Not only does Crawford–El fail to show by direct evidence that he and prisoners like him were systemically injured by defendants' policy, he fails to show it even by circumstantial evidence.

6. Fourth Amended Complaint, at ¶ 52.

7. Pl.'s Opp'n to Motion to Dismiss, at 17–18 n. 11.

8. These three allegations are as follows:

(1) On August 9, 1989, Crawford–El and other D.C. prisoners told Britton that their property, which she was responsible for shipping, included necessary materials on pending cases. Britton smirked and acted and spoke cavalierly, but said that she understood his concerns and promised to personally make sure that he received his property. (Fourth Amended Complaint, at ¶ 20.)

(2) In Petersburg, Virginia, other D.C. prisoners told Crawford–El that Britton had called their relatives and told them that if they did not pick up their property, she would throw it away. (Fourth Amended Complaint, at ¶ 28.) When Carter later voiced Crawford–El's concerns to Britton, she told him that Crawford–El should be happy she did not throw his property in the trash. (Fourth Amended Complaint, at ¶ 31.)

(3) Also in Petersburg, Virginia, Crawford–El and another prisoner called Britton, tricked her into accepting the call by having a friend place the call, told her that a Bureau of Prisons official had told them that their property would be sent to their final destinations, and expressed concern about their property. He alleges that Britton said that she had no duty to do anything with their property. (Fourth Amended Complaint, at ¶ 30.)

als nor limit his access to the courts. Lastly, his final cited allegation seems more supportive of defendants' position that his.[9]

Because Crawford–El has alleged no actual injury, and because he has not satisfactorily alleged systemic injury, Crawford–El's court access claim must be dismissed.

*IV. New Claims*

In addition to repleading his court access claim, Crawford–El invokes several other causes of action. Crawford–El alleges the violation of his First Amendment rights and his substantive and procedural due process rights. He also claims that defendants violated District of Columbia law by diverting his property outside government control to an unauthorized person. Each of these claims are examined in turn.

*A. First Amendment Claim*

Crawford–El had a history in prison of speaking to the press about poor prison conditions and of filing lawsuits against Britton and other prison officials and the government. He had communicated with newspaper reporters, filed informal requests for redress of grievances, aided other prisoners who were seeking redress, made persistent requests for the return of his property, and pursued litigation against Britton and other Department of Corrections employees or the District of Columbia. (Fourth Amended Complaint, at ¶¶ 41(a), 48.) Britton, he alleges, intentionally withheld and diverted his property during the transfers in order to retaliate for this "legal troublemaking," violating his First Amendment rights to freedom of speech and to petition for redress of grievances. As a result, he claims to have been forced to incur the cost of replacing clothing and shipping his boxes to himself, and to have suffered emotional distress.

In order to state a claim under the First Amendment, Crawford–El must establish first, that Britton's actions actually injured

his exercise of his First Amendment rights, and second, that he has satisfied the heightened pleading standard. Crawford–El has satisfied the first requirement, but not the second.

*1. Injury*

As with his court access claim, the threshold determination of Crawford–El's First Amendment claim is whether he can show actual injury. In *Crawford–El*, the Court of Appeals suggested that plaintiffs claiming First Amendment injuries must do more than simply allege that state actors acted unconstitutionally. The *Crawford–El* court indicated that even in First Amendment cases, at least a *de minimis* showing of injury is required. *See Crawford–El*, 951 F.2d at 1322. The court cited *dicta* in *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir.1982), in which Judge Posner stated that "[i]t would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise." The *Bart* court hypothesized that if, for example, a state official had done nothing more than frown at one of his employees in mild retaliation against the employee's determination to run for public office, the frown would not trigger a First Amendment claim. *See Bart*, 677 F.2d at 625. The court considered it "a question of fact" whether the challenged state actions rose to a First Amendment injury. *Id.*

■ Under this standard, Crawford–El must be able to show that Britton's retaliatory acts would chill or silence a "person of ordinary firmness" from future First Amendment activities. Crawford–El can make this showing. The pecuniary losses he sustained—the cost of shipping, and of replacing clothing—may be small, but they do amount to actual harm. This actual injury might

9. This last cited allegation states that in September 1989, Crawford–El asked attorney Robert Hauhart for help in retrieving his property. On behalf of Crawford–El and other prisoners, Hauhart wrote letters to Assistant Corporation Counsel (later Acting Deputy Director of the D.C. Department of Corrections) Paul Quander and to

Associate Director of the Department of Corrections Arthur Graves. Quander wrote back that "[w]e are ... moving with deliberate speed to dispatch inmates' property, including the four (4) individuals cited in your correspondence, in compliance with" Bureau of Prison directives. (Fourth Amended Complaint, at ¶¶ 32–35.)

well deter a person of ordinary firmness from speaking or petitioning again, for fear of incurring financial injury again. Because Crawford–El claims actual, financial injury, traceable directly to Britton's allegedly unconstitutional act, he has satisfied the injury requirement for his First Amendment claim.

### 2. Heightened Pleading Standard

■ Nevertheless, Crawford–El's First Amendment claim must be dismissed for failure to meet the heightened pleading standard. To survive a defense of qualified immunity, a claim of a constitutional violation by a government official which turns on the official's motive must meet the heightened pleading standard established in this Circuit. See, e.g., Siegert v. Gilley, 895 F.2d 797, 800–02 (D.C.Cir.1990), aff'd on other grounds, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991).

The heightened pleading standard requires plaintiffs to plead "specific direct evidence of intent." Kimberlin v. Quinlan, 6 F.3d 789, 793 (1993) (emphasis in original). Plaintiffs must point to direct, not merely circumstantial, evidence of government officials' unconstitutional motives. See Siegert, 895 F.2d at 802.

For example, in Hobson v. Wilson, 737 F.2d 1 (D.C.Cir.1984), cert. denied, 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985), plaintiffs met the heightened pleading standard by citing memoranda written by defendants (the Federal Bureau of Investigation and District of Columbia law enforcement authorities) stating that defendants were motivated by the unconstitutional desire to frustrate plaintiffs' political activities. Hobson, 737 F.2d at 10, 27.

Yet without this kind of direct evidence of unconstitutional motive, plaintiffs cannot meet the heightened pleading standard. In Kimberlin, for example, a prisoner was unable to produce direct evidence that he was placed in administrative detention three times in order to deny him access to the press and to retaliate for his claim that he had sold marijuana to Dan Quayle, then a vice-presidential candidate. The prisoner's case was backed by circumstantial evidence: discrepancies among accounts of the circum-

stances before the first and second detentions, hints that the official excuse for the detentions was pretextual, high-level official direction of local detention decisions, communication between the Bush–Quayle campaign and the defendants, and the prison's sudden decision to cancel a scheduled press conference. See Kimberlin, 6 F.3d at 801–03 (Edwards, J., dissenting). Such circumstantial evidence, suspicious as it may be, did not satisfy the heightened pleading standard. Accordingly, the Kimberlin court reversed the district judge's denial of the individual defendants' motion for dismissal or summary judgment on the First Amendment claims. See Kimberlin, 6 F.3d at 798.

As these examples show, direct evidence of unconstitutional intent is very hard to plead or produce, especially without the benefit of discovery. With the best evidence of unconstitutional motive often under defendants' control, plaintiffs are rarely in a position to plead or produce enough direct evidence to meet the heightened pleading standard. See Siegert, 500 U.S. at 246, 111 S.Ct. at 1800–01 (Marshall, J., dissenting). In fact, the heightened pleading standard appears to block all cases in which the defendants do not baldly state their unconstitutional motives, since even tremendous amounts of circumstantial evidence do not suffice. See Kimberlin, 6 F.3d at 798 (Williams, J., concurring).

■ Crawford–El's complaint cannot clear the high hurdle of the heightened pleading standard. His complaint lacks any direct evidence that when Britton withheld and diverted his property, she was motivated by an unconstitutional desire to punish him for speaking to the press, for pursuing litigation against her or other Department of Corrections employees or the District of Columbia, or for helping other inmates file grievances.

His allegations, listed below, are entirely circumstantial:

(1) Crawford–El alleges that Britton treated him worse than other prisoners because she knew that when he had been in charge of the law library at the Central Facility, he had helped other prisoners prepare their Administrative Remedy Procedure grievance forms or their appeals of disciplinary deci-

sions. Crawford–El had "a reputation for asserting legal rights and knowing the administrative procedures for doing so," and that made Britton hostile towards him. (Fourth Amended Complaint, at ¶ 6.)

(2) Crawford–El helped found an Inmate Grievance Committee to protest the lack of prisoner clothing and the correctional staff's persistent inability account for all prisoners in time for the prisoners' morning educational programs. Britton knew about Crawford–El's role in the Inmate Grievance Committee, and he alleges that it made her hostile towards him. When Crawford–El was typing in a correctional office as part of his clerical job, Britton caustically told the captain for whom he worked to make sure Crawford–El was not typing up lawsuits or grievance complaints. Britton then stood over him to see what he was typing. (Fourth Amended Complaint, at ¶¶ 7, 9.)

(3) On April 20, 1986, *The Washington Post* published a front-page article about jail overcrowding based on interviews with Crawford–El. The next day, Britton chastised Crawford–El for tricking her and for embarrassing her before her co-workers. She threatened to make life hard for him in jail any way she could. (Fourth Amended Complaint, at ¶ 12.)

(4) Britton stated on another occasion that prisoners like Crawford–El "don't have any rights." (Fourth Amended Complaint, at ¶ 15.)

(5) After the publication of a second *Washington Post* article, which reported inmates' suspicions that "they were handpicked for transfer [from the District of Columbia to the State of Washington] because they were 'jailhouse lawyers'—troublemaking 'writ-writers' who tied up the courts with occasionally successful lawsuits against the prison system" and quoted Crawford–El to that effect, Britton told another prison official that Crawford–El was a "legal troublemaker." (Fourth Amended Complaint, at ¶¶ 16–17.)

None of these allegations offers direct evidence that Britton was motivated by a desire to punish Crawford–El for his exercise of his First Amendment rights. At best, they show that Britton was hostile towards him generally and callous in her regard for constitutional rights. A jury might reasonably infer from these allegations that Britton diverted and withheld Crawford–El's property out of an unconstitutional desire to retaliate against a "legal troublemaker." However, reasonable inferences do not satisfy the heightened pleading standard. *See Kimberlin*, 6 F.3d at 798 (Williams, J., concurring). The heightened pleading standard demands direct evidence. All Crawford–El has pled in this case is circumstantial evidence—evidence that is weaker, incidentally, than the circumstantial evidence in *Kimberlin*.

Accordingly, defendants' motion to dismiss Crawford–El's First Amendment claim on qualified immunity grounds shall be granted for failure to meet the heightened pleading standard.

## B. *Procedural Due Process Claim*

Crawford–El also alleges that Britton's acts violated his Fifth Amendment right to procedural due process. (Fourth Amended Complaint, at ¶¶ 49, 52.)

For this violation, Crawford–El seeks both damages [10] and an injunction instituting hearings before prisoners are separated from their property. His proposed injunction would prevent the District, its officers, agents, and employees (i) from depriving prisoners of their legal materials without affording them a prompt informal hearing at which they may inform a responsible official of their need to retain or quickly regain possession of legal materials needed to pursue ongoing or contemplated legal proceedings, or (ii) from separating them from materials they reasonably deem necessary to pursue legal redress for periods they reasonably deem likely to be prejudicial to their cases. (Fourth Amended Complaint, at ¶¶ 53(c), 44(iii).)

Crawford–El's procedural due process claim challenges two separate actions of Britton: her withholding of his property, pursuant to District policy, during his transfer

---

10. He asks that the District be held jointly and severally liable with Britton under § 1983 for her challenged acts. (Fourth Amended Complaint, at ¶ 52.)

from Washington state to Florida; and her diversion of his property to his brother-in-law. Both halves of this procedural due process claim shall be dismissed. The second half merits dismissal under the *Parratt* doctrine. The first half must be dismissed because prisoners' interest in possessing property and the slight added value of a pre-deprivation hearing do not outweigh prison authorities' great and legitimate need to ensure safety and efficiency in prison transfers.

### 1. Diversion

■ The procedural due process claim's second half—Crawford–El's allegation that Britton diverted his property to his brother-in-law without authority—is easily dismissed. The facts of Britton's diversion are indistinguishable from the facts of *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), in which the Supreme Court held that where post-deprivation remedies are "the only remedies the State could be expected to provide," post-deprivation remedies are all that are constitutionally due. *Zinermon v. Burch*, 494 U.S. 113, 128, 110 S.Ct. 975, 984, 108 L.Ed.2d 100 (1990) (restating rule of *Parratt*).[11] Under such circumstances, if the state (or in this case, the District of Columbia) has provided an adequate post-deprivation remedy for an alleged loss, there is no constitutional due process violation. *See Parratt*, 451 U.S. at 544, 101 S.Ct. at 1917.

In *Parratt*, as in this case, the government could not have provided prisoners any conceivable process before a prison official—acting randomly and without authorization—deprived a prisoner of his property. In *Parratt*, the Court ruled that because the state could not have anticipated the negligent loss by prison officials of a hobby kit that a prisoner had ordered by mail, adequate post-deprivation remedies sufficed. *See Parratt*, 451 U.S. at 541, 101 S.Ct. at 1916. In a case following *Parratt*, *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the Court similarly ruled that because the state could not have anticipated the intentional, unauthorized destruction of inmate property by a malicious prison guard, adequate post-deprivation remedies sufficed. *See Hudson*, 468 U.S. at 533, 104 S.Ct. at 3203.

This case is not materially different from *Parratt* or *Hudson*. Here, the District could not have anticipated Britton's wacky decision to divert Crawford–El's property to his brother-in-law without authorization. It is hard to imagine that it is District policy to mail prisoner property to family members instead of to the prisoners themselves, without prisoner consent. (According to defendants, Britton diverted Crawford–El's property to his brother-in-law because she misunderstood the Federal Bureau of Prisons' policy about shipments of prisoner property. She apparently believed that the federal correctional institution in Marianna, Florida, would not accept prisoner property shipped by District officials. (Defs.' Motion to Dismiss, at 5 & n. 3.)) Assuming that it is not District policy to force family members to

---

**11.** Although *Parratt* involved the due process clause of the Fourteenth Amendment, its analysis is equally applicable to Crawford–El's due process claim under the Fifth Amendment. *See, e.g., Gilles v. Touchstone*, 676 F.Supp. 341 (D.D.C. 1987) (applying *Parratt* analysis to a Fifth Amendment due process claim against officers of the District of Columbia).

Nor does *Parratt*'s partial reversal render the *Parratt* rule inapplicable to this case. *Parratt* was partially overruled by *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) and *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986), which held that merely negligent acts that cause unintended injury to property do not violate the due process clause.

In this case, Crawford–El has not based his procedural due process claim on an allegation of mere negligence. He alleges that Britton withheld and diverted his property while "knowing, or with reckless disregard for and deliberate indifference [as] to whether" his property included legal materials in pending or contemplated cases. (Fourth Amended Complaint, ¶ 49.)

The Supreme Court has considered governmental action taken with willful, wanton and reckless disregard for and indifference to constitutional rights to be sufficient to state a procedural due process claim. *Zinermon*, 494 U.S. at 121, 110 S.Ct. at 980. Although the *Zinermon* court did not address the state-of-mind issue squarely, the Court did hold that the "complaint was sufficient to state a claim under § 1983 for violation of his procedural due process rights." *Zinermon*, 494 U.S. at 139, 110 S.Ct. at 990. *See also id.* at 143, 110 S.Ct. at 992 (O'Connor, J., dissenting) (allegations that rights were violated "deliberately or recklessly" are sufficient).

retrieve prisoner property, Britton's action was unauthorized, unpredictable, and random (although not unique, since she is alleged to have done the same thing with other prisoners' property). Because of that, there is no conceivable way that the District could fashion a hearing to prevent her from doing what she did.

When the District cannot reasonably anticipate due process violations, post-deprivation remedies—such as recourse to an adequate local law claim—are sufficient. In this case, an entirely adequate District of Columbia post-deprivation procedure was available to Crawford–El for the recovery of his loss. He could have brought an action for damages in the District of Columbia courts alleging that the city or its officers did negligent or intentional harm to his property.[12] The pleadings in this case do not reflect that he brought such an action in the District of Columbia courts.

Because the District of Columbia courts afforded him an adequate proceeding in which he could have recovered his loss, and because Britton's random and unauthorized diversion of his property could not have been prevented with a pre-deprivation hearing, this half of Crawford–El's procedural due process claim shall be dismissed.

*2. Withholding*

■ The other half of Crawford–El's procedural due process claim challenges the District's practice of withholding prisoners' possessions—including their legal materials—for lengthy periods of time during prisoner transfers. This half of the claim shall also be dismissed, but for a different reason.

*Parratt* does not dispose of this withholding claim as it disposed of the diversion claim. Instead of challenging one random and unauthorized act, Crawford–El's withholding claim alleges a general failure to provide procedural safeguards to prevent foreseeable, avoidable harms authorized by the District. Crawford–El alleges (and the District does not dispute) that when he was transferred, there was a foreseeable risk that he would be separated from his legal materials while one of his cases was pending or contemplated. He also alleges that this risk could have been avoided by a pre-deprivation hearing, and that when Britton withheld his property, she was exercising power delegated to her from the District to do so.[13] In such a case, the mere existence of adequate post-deprivation remedies is not sufficient to dismiss the claim. *See Zinermon,* 494 U.S. at 136, 136–38, 110 S.Ct. at 989, 989–90 (permitting procedural due process claim to go forward, despite existence of adequate state remedies, where deprivation was alleged to have been predictable, avoidable through pre-deprivation procedures, and authorized).

■ Since the withholding claim cannot be easily dismissed under *Parratt,* the task becomes determining whether any process is due, and how much. Procedural due process "is a flexible concept that varies with the particular situation." *Zinermon,* 494 U.S. at 127, 110 S.Ct. at 984. The particularized inquiry of determining how much process is

12. *See, e.g., Ali v. Barry,* 550 A.2d 1130, 1131 n. 3 (D.C.App.1988) (District officials liable for intentional damage to property when committed within scope of employment); *Scott v. District of Columbia,* 493 A.2d 319, 322 (D.C.App.1985) (District liable for its employees' intentional torts when committed within scope of employment). *See also* 24 D.C.C. § 442 ("Department of Corrections ... shall ... be responsible for the safekeeping, care, protection, instruction and discipline of all persons committed to such institutions.").

13. According to Crawford–El's unchallenged allegations, Britton's withholding of his property during his transfer occurred because of "the District of Columbia's alleged custom, policy, and practice of seizing active legal files for indefinite periods." (Pl.'s Opp'n to Motion to Dismiss, at

20.) "At no time during this litigation has anyone suggested that Ms. Britton's mass seizure of prisoner property was unusual or in any way in violation of District policy." (Pl.'s Opp'n to Motion to Dismiss, at 15 n. 8.) Crawford–El expects that his "discovery requests will show that the District of Columbia routinely deprives prisoners of their property, including legal papers, for substantial periods of time, incident to movement to distant facilities, or from one District facility to another, and even from cell to cell." (Pl.'s Opp'n to Motion to Dismiss, at 15 n. 8.) He asserts that "[u]nder current District policy, Mr. Crawford–El has no right to retain possession of active legal files during travel to his final federal destination." (Pl.'s Opp'n to Motion to Dismiss, at 17 n. 11.)

due in a given situation is governed by three factors:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). A weighing of the three factors in this case shows that the District's interest in securing a safe and efficient system of prisoner transfers far outweighs prisoners' interest in possessing their property, given the very slight added value that a pre-deprivation hearing would provide.

Prisoners like Crawford–El, of course, have an interest in their possessions, and in some possessions they have a stronger interest than others. They have an especially high interest in their legal materials that are necessary to pursue pending or contemplated litigation. To deprive prisoners of legal materials entirely might frustrate their ability to pursue litigation, jeopardizing their constitutional right to court access. It would be just as unconstitutional as unjustifiedly requiring Jewish inmates to surrender every yarmulke or other head covering during transfers, frustrating the "First Amendment right to fulfill one of the traditional obligations of a male Orthodox Jew—to cover his head before an omnipresent God." [14] By contrast, prisoners have a much lesser interest in their possessions that have nothing to do with the exercise of constitutional rights. Crawford–El may have a strong interest in possessing his legal materials, but he has a far weaker interest in possessing the under-

wear and tennis shoes that were packaged in his shipped boxes.

The second prong of the *Mathews* analysis requires examining the degree to which a pre-withholding hearing would prevent wrongful deprivations of prisoner property. A pre-withholding hearing would not add much to the redress already available to prisoners like Crawford–El. He is already free to alert the courts in which his cases are pending to the delay. He can move those courts for an extension of time until the legal materials were returned, or if necessary, he can move for an injunction ordering the District to return necessary legal materials. Such measures minimize, if not eradicate, any risk that his court access rights would actually be injured when the District withholds his legal materials.

Thirdly, the *Mathews* analysis requires weighing the District's need for efficiency and security in prisoner transfers. The District has a great interest in ensuring safe and efficient prisoner transfers by transferring prisoners' property separately from the prisoners themselves.

In sum, the Constitution does not require burdening the District with expensive pre-withholding hearings which would not add much to the relief prisoners already have available. Crawford–El's strong interest in possessing his legal materials is already sufficiently safeguarded by his ability to appeal to the courts handling his jeopardized cases; his negligible interest in his sneakers deserves no additional procedural safeguards.

Because the District's interests outweigh the prisoners' interests and the risk of error in this *Mathews* balancing test, no pre-deprivation hearing is constitutionally required before the District withholds property from prisoners. Because the District's failure to provide such a pre-withholding hearing does not amount to a constitutional violation, this

---

14. *Goldman v. Weinberger,* 475 U.S. 503, 513, 106 S.Ct. 1310, 1316, 89 L.Ed.2d 478 (1986) (Brennan, J., dissenting).

The *Goldman* court upheld an Air Force ban against wearing yarmulkes because the judiciary owes "great deference to the professional judgment of military authorities concerning the rela-

tive importance of a particular military interest." *Goldman,* 475 U.S. at 507, 106 S.Ct. at 1313. Although military decisions may deserve the height of judicial deference, the decisions of District of Columbia prison officials do not, especially when they effectively ban religious practices for no legitimate reason.

half of Crawford–El's procedural due process claim shall be dismissed.

### C. Substantive Due Process Claim

 Crawford–El also alleges that Britton's withholding and diversion of his property violated his Fifth Amendment substantive due process "protect[ing] property possession."[15] The due process clause of the Fifth Amendment, however, affords property only procedural protection, forbidding the District of Columbia from depriving any person of property without due process of law. There is no absolute, substantive right not to be alienated from one's property. *See, e.g., Gilles,* 676 F.Supp. at 344 (Fifth Amendment's due process clause "protects against deprivation of property *without due process of law* ") (emphasis in original). *Cf. Parratt,* 451 U.S. at 537, 101 S.Ct. at 3205 ("Nothing in [the Fourteenth] Amendment protects against all deprivations of life, liberty, or property by the State. The Fourteenth Amendment protects only against deprivations 'without due process of law.' ") (citations omitted). Crawford–El received due process before being deprived of his property (*see supra* (IV)(B)), and he is entitled to nothing more under the Fifth Amendment. Accordingly, his substantive due process claim shall be dismissed.

### D. Common Law Claim of Conversion

 Lastly, Crawford–El claims that Britton's diversion of his property outside government control to an unauthorized person constitutes conversion, and that the District of Columbia is jointly and severally liable for her act of conversion under the doctrine of *respondeat superior.* (Fourth Amended Complaint, at ¶¶ 46, 47.) *See Fo-*

*tos v. Firemen's Ins. Co.,* 533 A.2d 1264, 1267 (D.C.App.1987).

Without considering the merits of this contention, this court must dismiss the claim for lack of jurisdiction. All of Crawford–El's federal claims are being dismissed, and a District law tail should not be allowed to wag the federal dog. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

### V. Conclusion

Although defendants have prevailed on their motion to dismiss, this court expresses its appreciation to Crawford–El's court-appointed counsel, Daniel M. Schember, who handled this case since Britton's notice of appeal in an exemplary fashion. His pleadings before this court were well-researched and well-argued. He has performed in the highest traditions of the District of Columbia Bar.

All of Crawford–El's federal claims are dismissed, both as against Britton and as against the District of Columbia.[16] Crawford–El's common law claim is also dismissed for lack of jurisdiction. A separate order shall issue this date.

### ORDER

This case comes before this court on defendants' motion to dismiss plaintiff's fourth amended complaint. Having considered defendants' motion and plaintiff's opposition, defendants' motion is hereby GRANTED for the reasons set forth in an accompanying memorandum opinion. The court hereby dismisses the federal claims of plaintiff's fourth amended complaint, both as against defendant Patricia Britton and as against the Dis-

---

**15.** Pl.'s Opp'n to Motion to Dismiss, at 22–23; Fourth Amended Complaint, at ¶ 49.

The complaint that the Court of Appeals reviewed in this case also alleged a violation of Fifth Amendment due process rights, but the Court of Appeals found this claim "substantively indistinguishable from the access to courts claim" and declined to address it separately. *Crawford–El,* 951 F.2d at 1316 n. 1.

**16.** Crawford–El has brought his federal claims against both Britton and the District. He alleges that her decision to withhold and divert his prop-

erty executes an unconstitutional District policy or custom, rendering the District liable for her acts. *See, e.g., Monell v. Department of Social Services,* 436 U.S. 658, 690–94, 98 S.Ct. 2018, 2035–37, 56 L.Ed.2d 611 (1978); *Pembaur v. Cincinnati,* 475 U.S. 469, 477–484, 106 S.Ct. 1292, 1297–1300, 89 L.Ed.2d 452 (1986).

However, there is no need to decide this question because all of Crawford–El's constitutional claims fail against Britton herself. Because Crawford–El has not shown that Britton committed any constitutional violations, the District cannot be held liable for her acts.

trict of Columbia. Crawford–El's District of Columbia law claim is also dismissed for lack of jurisdiction.

SO ORDERED.