**Edward JOHNSON**

v.

**Vivian MILLER, et al.**

**Civ.A. No. 94–6499.**

United States District Court,
E.D. Pennsylvania.

Feb. 7, 1996.

---

Edward Johnson, Waymart, PA, pro se.

Jeffrey B. First, City of Phila. Law Dept.–Asst. City Solicitor, Philadelphia, PA, for Vivian T. Miller.

Jeffrey B. First, City of Phila. Law Dept.–Asst. City Solicitor, Philadelphia, PA, Elizabeth Brendze, City of Philadelphia Law Dept. Philadelphia, PA, for Whitney Burke.

## OPINION

LOUIS H. POLLAK, Senior District Judge.

Now before the court is a Report and Recommendation ("R & R") by Magistrate Judge Welsh addressing a motion for partial summary judgment by the defendants in this case, Vivian Miller, a Clerk of Court, and Whitney Burke, a court reporter. (The R & R is appended to this opinion.) The defendants have not filed objections to the R & R; I write this memorandum only to add one or two explanatory notes to my approval of it.

The plaintiff, Edward Johnson, is an inmate at S.C.I. Waymart. His suit, which is brought under 42 U.S.C. § 1983, alleges that the defendants have denied him access to the courts by failing for over fifteen months to fulfil his request for "transcripts, records and dockets" related to his prosecution and conviction in a previous case. The defendants admit in their answer that they received Johnson's initial request. Johnson's complaint, which is somewhat unclear, can be read to say that he later repeated his request; the defendants' answer does not speak to this point.

Judge Welsh's analysis of this case is very thorough, and I will not repeat it in detail here. As she observes, the Supreme Court has found that prisoners have a constitutional right to "adequate, effective and meaningful" access to the courts. *Bounds v.*

*Smith,* 430 U.S. 817, 822, 97 S.Ct. 1491, 1495, 52 L.Ed.2d 72 (1977). The Third Circuit has found this right to issue both from the first amendment right to petition the government for the redress of grievances and from the due process clauses of the fifth and fourteenth amendments. *See Bieregu v. Reno,* 59 F.3d 1445, 1453–54 (3rd Cir.1995).

 I will begin by briefly summarizing a number of elements of Judge Welsh's Report and Recommendation. The defendants make two arguments—that Johnson has failed to demonstrate actual injury and that they are entitled to judicial immunity—which Judge Welsh finds unmeritorious. I find her discussion of these claims entirely persuasive, and will adopt it without further comment. Judge Welsh also notes, *sua sponte,* that Johnson has, since this case was filed, received the transcripts that he sought, so that the injunctive element of Johnson's complaint must be dismissed. Once again, I agree. Finally, defendant Miller argues that she is entitled to summary judgment as a matter of law because there is no evidence in the record "that she was personally involved in the denial of transcripts and other documents related to the plaintiff's criminal trial." Judge Welsh finds, and I agree, that the absence of evidence of her personal involvement precludes her being found liable under section 1983, so that summary judgment must be entered in her favor.

 The remaining defendant, Burke, argues that she is entitled to summary judgment because there is no evidence in the record that she intentionally deprived Johnson of access to the courts. In support of her claim that Johnson must present such evidence, she cites *Crawford–El v. Britton,* 951 F.2d 1314, 1318 (D.C.Cir.1991), *cert. denied,* 506 U.S. 818, 113 S.Ct. 62, 121 L.Ed.2d 29 (1992). In that case, Judge Williams stated that a defendant's conduct "would constitute a violation of Crawford–El's right [of access to the courts] only if [the defendant] knew his property contained legal papers *and* [the defendant] diverted the property with the purpose of interfering with his litigation, or at least with deliberate indifference to such interference." *Id.* at 1318 (emphasis in original).[1]

The Third Circuit has not yet had occasion to decide what state of mind of a defendant a plaintiff must demonstrate in order to establish that the defendant has violated his right of access to the courts. Judge Welsh's Report and Recommendation provides a well-reasoned analysis of *Crawford–El's* rationale for adopting the standard of "deliberate indifference." She observes that all seven cases cited in *Crawford–El* as authority for that case's demanding state-of-mind requirement are also consistent with a less demanding standard. R & R at 10–15. Judge Welsh also notes that one of the cases cited in *Crawford–El, Washington v. James,* 782 F.2d 1134 (2nd Cir.1986), states that "prison officials cannot unreasonably obstruct" a prisoner's constitutional right of access to the courts, a phrase that appears to argue for a less exacting standard than one of "deliberate indifference."

Judge Welsh's analysis suggests that it might not be wise to rely on *Crawford–El* alone in determining what state of mind of the defendant a plaintiff must demonstrate in order to establish a violation of his right of access to the courts. However, at this stage of the case at bar I think it unnecessary to determine exactly what form of words should best describe the state-of-mind standard to be applied to the conduct of defendant Burke. This is not because I disagree with Judge Welsh's analysis on its merits.[2] Rather, it is because I am of the view that,

1. *Crawford–El* does not, as Burke claims, state that Johnson must show that she *intentionally* deprived him of access to the courts; it states that he must show that she did so either intentionally or with deliberate indifference.

2. The First Circuit has adopted a standard of "reckless or callous indifference," which "falls short of intentional or willful conduct," but is greater than simple negligence. *Germany v. Vance,* 868 F.2d 9, 18 (1st Cir.1989). As I suggest below (in the text, at footnote 3), the Third Circuit's definitions of "deliberate indifference" are quite close to "reckless or callous indifference." Accordingly, viewed through the prism of Third Circuit doctrine, *Germany* would appear to be in harmony with *Crawford–El.*

However, an analysis of the constitutional provisions that are the source of the right of access to the courts suggests that, whatever form of words is eventually adopted to describe the applicable state-of-mind requirement, it should not

supposing, *arguendo*, that the Third Circuit, when faced with the issue, accepts "deliberate indifference"—the *Crawford–El* talisman—as the governing standard for a case of this kind, Burke's motion for summary judgment must be denied under that standard.

The Third Circuit has treated "deliberate indifference" as essentially synonymous with "reckless indifference" and "reckless disregard" for purposes of section 1983 actions.[3] There is certainly a genuine issue of material fact as to whether Burke's conduct amounts to "reckless indifference." Johnson sent his request for court records by certified mail, and waited fifteen months before filing his complaint. He also may have renewed his request one or more times. Burke, in her

hold a plaintiff to an overly stringent standard. *Washington* does not relate its state-of-mind standard to the relevant constitutional provisions. *Germany,* however, does; the First Circuit appears to have assumed that the right of access to the courts derives exclusively from the due process clause's procedural due process protections, *see* 868 F.2d at 18, and so applied legal principles appropriate to procedural due process claims.

The Fifth Circuit has found that the right of access to the courts is protected as a matter both of substantive and of procedural due process. *See Jackson v. Procunier,* 789 F.2d 307, 310 (5th Cir.1986). If this is correct, it would then be necessary to address the state-of-mind component of substantive due process claims. In this circuit, a showing of recklessness appears to suffice to establish liability towards persons in custody. *See Fagan v. City of Vineland,* 22 F.3d 1296, 1306 (3rd Cir.1994) (in banc) (noting this exception to the general rule that a plaintiff alleging a denial of substantive due process must demonstrate conduct that "shocks the conscience").

Because the Third Circuit has found that the first amendment right to petition for the redress of grievances is also a source for the right of access to the courts, *see Bieregu,* 59 F.3d at 1453, an analysis of the state-of-mind requirement associated with the right of access to the courts must also look to the (admittedly sparse) authority associated with the first amendment's petition clause. The Supreme Court has suggested that cases interpreting the first amendment's other expressive freedoms, such as the right of free speech, are one possible source of authority for the meaning of the petition clause. *See, e.g., Wayte v. United States,* 470 U.S. 598, 610, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985). This rule must be applied with caution in cases involving access to the courts or to other grievance mechanisms, however, as in those cases the protections of the petition clause may be greater than those of the free speech clause. *See San Filippo v. Bongiovanni,* 30 F.3d 424, 441–43 (3rd Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 735, 130 L.Ed.2d 638 (1995); *see also* Kara Elizabeth Shea, Recent Development, *San Filippo v. Bongiovanni: The Public Concern Criteria and the Scope of the Modern Petition Right,* 48 **Vand. L.Rev.** 1697 (1995) (providing a general analysis of *San Filippo*).

*San Filippo* relies upon the historical right, corollary to the right to petition, to be immune from prosecution for petitioning. *See id.* at 443. Some scholars have also suggested that the right to petition historically included a right to have one's petition considered, *see* Stephen A. Higginson, *A Short History of the Right to Petition Government for the Redress of Grievances,* 96 **Yale L.J.** 142, 147–49, 156, 165 (1986) (suggesting that it was the practice of colonial legislatures and of the early federal Congress to consider all petitions), and to receive a response, *see* Julie M. Spanbauer, *The First Amendment Right to Petition Government for a Redress of Grievances,* 21 **Hastings Const. L.Q.** 15, 33 (1993). These claims, if correct, would reinforce *San Filippo's* conclusion that the right to petition, far from being a mere subspecies of the right of free speech, is properly viewed as an independent guarantee of meaningful access to governmentally established grievance procedures. That conclusion, in turn, suggests that government officials may not carelessly frustrate a citizen's right to petition.

3. *See Shaw by Strain v. Stackhouse,* 920 F.2d 1135, 1145 (3rd Cir.1990) (noting that a state actor who fails to protect a person in his custody can be found liable upon a showing that he was "recklessly indifferent, grossly negligent, or deliberately and intentionally indifferent"); *Williams v. Borough of West Chester,* 891 F.2d 458, 464 n. 10 (3rd Cir.1989); *Colburn v. Upper Darby Township,* 838 F.2d 663, 669–70 (3rd Cir. 1988), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1989).

In *Simmons v. City of Philadelphia,* 947 F.2d 1042 (3rd Cir.1991), *cert. denied,* 503 U.S. 985, 112 S.Ct. 1671, 118 L.Ed.2d 391 (1992), Judge Becker endorsed a somewhat differently worded definition of "deliberate indifference" for purposes of (municipal) governmental liability for failure to train police officers, concluding that the imposition of liability in a situation of that kind would have to be supported by a finding of a "particularly wil[l]ful[] type of recklessness." *Id.* at 1060 n. 13. However, Judge Becker's opinion did not suggest that this standard should be applicable to individuals. Moreover, Chief Judge Sloviter declined to join this aspect of Judge Becker's opinion, believing that the unadorned adjective "reckless" sufficiently described the sort of conduct that would give rise to liability. *See id.* at 1090 (Sloviter, C.J., concurring). Judge Weis, who dissented, did not express a view on this question.

answer, acknowledges that Johnson filed his request; she also does not contest his claim that no materials were sent to him for fifteen months. Requests for court materials, particularly when sent certified mail by prison inmates, are very likely indeed to relate to pending or contemplated litigation. A jury could certainly conclude that Burke must have known that delaying for fifteen months in responding to Johnson's requests created a very grave risk of interfering with his access to the courts, and hence that her conduct exhibited reckless indifference to Johnson's right of access to the courts. Burke therefore could not prevail on her motion for summary judgment even if *Crawford–El* is the law of this circuit—a finding, I emphasize once again, that I do not make here.

### *REPORT AND RECOMMENDATION*

WELSH, United States Magistrate Judge.

This is a civil rights lawsuit filed pursuant to 42 U.S.C. § 1983. The named defendants are Vivian Miller, the Clerk of Quarter Sessions for the Court of Common Pleas for Philadelphia County, and Whitney Burke, a court reporter. The plaintiff is Edward Johnson, an inmate at S.C.I. Waymart. He alleges that on October 25, 1993, he requested that the Prisoner Liaison Unit of the Philadelphia County Court of Common Pleas provide him with "transcripts, records and dockets" related to his prosecution and conviction in a case numbered CP# 9102–2207, 2210, 2211, 2018, 2019, 2022, and 2023. The plaintiff alleges that on one or two later occasions he made the same request to the Prisoner Liaison Unit and that those requests were ignored. The plaintiff also alleges that, as a result of not obtaining the papers he requested, he was denied access to the courts and that his direct appeal was impeded. As relief, he requested that the defendants be enjoined from denying him his right of access to the courts and an award of money damages.

The defendants' answer was as follows:

The Defendants admit that the Plaintiff filed a request for materials related to his criminal case. By way of further answer, the defendants aver that the requested notes of testimony are in the process of being completed and will be provided to the Plaintiff in the near future. Additional information requested is not presently in the possession of the Defendants. Defendants will endeavor to locate the additional information and provide it to the plaintiff as soon as possible.

The defendants also raised the affirmative defense of qualified immunity.

Discovery closed on March 10, 1995. The plaintiff filed a discovery motion on March 17, 1995, to which the defendants have not responded. This motion is the subject of a separate Memorandum and Order which will be filed today. The defendants filed a motion for summary judgment on April 7, 1995, to which the plaintiff has responded. The defendants' motion for summary judgment is the subject of this Report and Recommendation.

The plaintiff's complaint alleges a violation of his right of access to the courts. The Supreme Court has held that "prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977). In order to comply with the constitution, the access must be "adequate, effective and meaningful." *Id.* at 822, 97 S.Ct. at 1495. In *Bounds*, the Court did not identify the precise constitutional provision that was the source of the right of court access, hence the lower federal courts have been divided with respect to the source of the right of access. *See Bieregu v. Reno*, 59 F.3d 1445, 1453 (3d Cir.1995) (surveying the Circuit Courts of Appeal). The Third Circuit has recently held that the First Amendment right to petition the government for redress of grievances is a proper source for the right of access to the courts. *Id.* The court also held that the Due Process Clause is a proper source for the right of access to the courts. *Id.* at 1453–54.

▇ In *Bieregu*, the court also addressed the scope of the right of access to courts. The court explained that in this circuit it is necessary to determine whether the matter complained of is central to or ancillary to the right of access. *Id.* at 1455. Where a mat-

ter is ancillary, the plaintiff must show an actual injury to his right of access in order to maintain a cause of action. *Id.* However, where the issue complained of is central, no actual injury is required. *Id.*

 Examples of matters which are ancillary to the right of court access are a prison's failure to provide free pads, pens, pencils, postage and photocopying to prisoners who had sufficient funds to pay for them and a prisoner being forced to wait ten days to have a document notarized. *Id.* (citations omitted). The adequacy of a prison law library is central. *Id.* (citing *Peterkin v. Jeffes,* 855 F.2d 1021, 1039, 1041–42 (3d Cir. 1988)). In *Bieregu,* the court held that repeated violations of the confidentiality of a prisoner's incoming court mail is more central than ancillary and that no actual injury need be demonstrated. *Id.*

 The question presented in this case is whether the plaintiff's complaint regarding the defendants' failure to provide him with transcripts and documents related to his criminal trial for over fifteen months [1] is central to or ancillary to his right of access to courts. In making such a determination, this court does not write on a clean slate. The Supreme Court has long held that an indigent inmate is entitled to receive free transcripts of his criminal proceedings, or their functional equivalent, in order to appeal or collaterally attack his conviction. *Roberts v. LaVallee,* 389 U.S. 40, 42, 88 S.Ct. 194, 196, 19 L.Ed.2d 41 (1967) (*per curiam*); *Draper v. Washington,* 372 U.S. 487, 496–500, 83 S.Ct. 774, 779–781, 9 L.Ed.2d 899 (1963); *Eskridge v. Washington State Bd. of Prison Terms and Paroles,* 357 U.S. 214, 216, 78 S.Ct. 1061, 1062, 2 L.Ed.2d 1269 (1958) (*per curiam*); *Griffin v. Illinois,* 351 U.S. 12, 19–20, 76 S.Ct. 585, 591, 100 L.Ed. 891 (1956). The holdings in those cases were driven by the need to ensure that indigent defendants could pursue as adequate an appeal as moneyed defendants. *See e.g. Griffin,* 351 U.S. at 17–18, 76 S.Ct. at 589–90. However, the Court also noted that tran-

scripts or their functional equivalents were necessary for the defendants to have a basis for appeal. *See e.g. Draper,* 372 U.S. at 494–97, 83 S.Ct. at 778–80.

This court cannot ignore the Supreme Court's precedent regarding an inmate's need for transcripts in order to pursue an appeal and is compelled to conclude that the matter complained of is more central than ancillary to the right of court access. Further, by comparing those matters which the Third Circuit has found to be central with those matters which the Third Circuit has found to be ancillary, the court is of the view that transcripts and other documents related to a criminal trial are more analogous to the central matters than the ancillary ones. Since the court has concluded that the matter complained of in this case is central, the plaintiff need not establish an actual injury in order to maintain his cause of action. *See Bieregu,* 59 F.3d at 1455.

Having set forth the substantive constitutional law that governs this case, the court will now direct its attention to the grounds the defendants have raised in their motion for summary judgment. Both defendants argue that the plaintiff has not suffered an actual injury to his right of court access. Defendants' Memorandum of Law (Document No. 14) at 3–4. Both defendants argue that they are entitled to judicial immunity. *Id.* at 4–5. Defendant Miller argues that the plaintiff has not presented any evidence that she was personally involved in the alleged constitutional violation. *Id.* at 4–5. Defendant Burke argues that the plaintiff has not presented any evidence that she intentionally deprived the plaintiff of access to the courts. *Id.* at 5.

 A motion for summary judgment may be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). An issue of fact is genuine if there is sufficient evidence that would permit a jury to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477

---

1. The plaintiff alleges that he made his first request for documents on October 25, 1993. In the answer filed on February 8, 1995, the defendants admitted that the plaintiff had made a request for documents and that they had not yet provided him with any of the documents he had requested.

U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). An issue of fact is material if it might affect the outcome of the suit under the governing law. *Id.* at 248, 106 S.Ct. at 2510.

■ The moving party bears the initial burden of identifying for the court the basis for its motion and the portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). To avoid summary judgment, the non-moving party must produce evidence such that a reasonable jury could find for that party. *Anderson,* 477 U.S. at 248–49, 106 S.Ct. at 2510–11. When deciding whether summary judgment is appropriate, the court must draw all reasonable inferences in the light most favorable to the non-moving party. *Id.* at 255, 106 S.Ct. at 2513–14.

The first argument raised by both defendants can be disposed of easily. As explained earlier, there is no actual injury requirement when a plaintiff alleges that his right of access to courts has been violated by the denial of transcripts and other documents related to his criminal trial. Thus, this argument is without merit.

■ Next, both defendants argue that they are entitled to judicial immunity. In their answer, they did not raise judicial immunity, instead, they raised qualified immunity as their only affirmative defense. Judicial immunity, like qualified immunity, is an immunity from suit, not just from damages. *See Mireles v. Waco,* 502 U.S. 9, 11–13, 112 S.Ct. 286, 288, 116 L.Ed.2d 9 (1991) *(per curiam).* As such, it is an affirmative defense. *Cf. Siegert v. Gilley,* 500 U.S. 226, 231, 111 S.Ct. 1789, 1792–93, 114 L.Ed.2d 277 (1991) (citations omitted) (Qualified immunity is an affirmative defense which the defendant has the burden of pleading.) The Federal Rules of Civil Procedure clearly state that all affirmative defenses and avoidances "shall" be pleaded in the answer. Fed.R.Civ.P. 8(c). Since the defendants did not plead judicial immunity, they have waived it.

■ Even if the defendants had properly pleaded judicial immunity, they would not be entitled to it. The Supreme Court has held that court reporters are not entitled to judicial immunity. *Antoine v. Byers & Anderson, Inc.,* 508 U.S. 429, 436–38, 113 S.Ct. 2167, 2172, 124 L.Ed.2d 391 (1993). Therefore, defendant Burke is not entitled to judicial immunity. Clerks of Court are also not entitled to judicial immunity. *Brightwell v. Miller,* C.A. No. 92–2649, 1993 WL 429083, 1993 U.S. Dist. LEXIS 14965, at \*7 (E.D.Pa. Oct. 21, 1993) (citations omitted). Therefore, defendant Miller is not entitled to judicial immunity.

■ Defendant Miller's last argument is that she is entitled to judgment as a matter of law because the record is devoid of any evidence that she was personally involved in the denial of transcripts and other documents related to the plaintiff's criminal trial. The Third Circuit has held that in every § 1983 action, regardless of the constitutional violation at issue, a defendant cannot be held liable unless she was personally involved in the alleged wrongful conduct. *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988). Thus, whether defendant Miller was personally involved in the alleged wrongful conduct is a material fact.

The plaintiff has filed a response to the defendants' motion for summary judgment (Document No. 18) and he has filed an affidavit in opposition to the motion (Document No. 20). In none of these documents has the plaintiff presented any evidence that defendant Miller was personally involved in the conduct which the plaintiff alleges violated his right of court access. Since the plaintiff has not produced any evidence to demonstrate that defendant Miller was personally involved in the acts complained of, he has failed to create a genuine issue of material fact and summary judgment should be entered for defendant Miller.

■ Defendant Burke's last argument is that the record is devoid of any evidence that she intentionally deprived the plaintiff of access to the courts. Defendant Burke is arguing that the question whether she intentionally deprived the plaintiff of his right to court access is one of material fact. In support of this position, she cites *Crawford–El v.*

*Britton,* 951 F.2d 1314 (D.C.Cir.1991), *cert. denied,* 506 U.S. 818, 113 S.Ct. 62, 121 L.Ed.2d 29 (1992). Section 1983 has no state of mind requirement independent of what is necessary to establish a violation of the underlying constitutional right. *Parratt v. Taylor,* 451 U.S. 527, 534–35, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Thus, the defendant's state of mind is a material fact only if the right of court access requires a particular state of mind. The court will now direct its attention to that question.

In *Crawford–El,* the D.C. Circuit was faced with a case involving a prison official's failure to provide an inmate with his legal papers in a timely fashion. *Crawford–El,* 951 F.2d at 1316. The problem arose because the plaintiff had been transferred to various prisons throughout the country. *Id.* The court surveyed the cases that had been decided up to the time of decision and concluded that the defendant's "act would constitute a violation of Crawford–El's right only if [the defendant] knew his property contained legal papers *and* [the defendant] diverted the property with the purpose of interfering with his litigation, or at least with deliberate indifference to such interference." *Crawford–El,* 951 F.2d at 1318 (emphasis as in original).[2]

In coming to its conclusion that a specific intent to interfere with litigation was required, the D.C. Circuit did not cite a single Third Circuit decision. This is not surprising because this court has found no Third Circuit decision that had so held prior to the date *Crawford–El* was decided. This court has also failed to find a Third Circuit case decided after *Crawford–El* that has required a plaintiff alleging a violation of his right to court access to prove that the defendant

acted with the specific intent to interfere with the plaintiff's litigation.

In *Bieregu,* the Third Circuit did not require a specific intent. The court did distinguish between "a single, inadvertent instance of an inmate's court mail being opened outside his presence, and a pattern and practice of such conduct." *Bieregu,* 59 F.3d at 1455. However, the court also noted that if an inmate suffered an isolated and inadvertent opening of his court mail outside his presence, the conduct would still be actionable if there was an actual injury to the inmate's right to court access. *Id.* at 1455. Under *Crawford–El,* a similar act that caused an actual injury would not sustain a cause of action because such an act would be performed without the specific intent to deprive court access. For this reason, *Bieregu* is inconsistent with *Crawford–El* and it provides no support for defendant Burke's contention that she cannot be held liable for violating the plaintiff's right to court access absent a showing that she acted with the intent to interfere with his litigation.

There is another reason for not adopting the specific intent rule of *Crawford–El.* The court has reviewed the cases the D.C. Circuit relied upon in holding that an intent to interfere with litigation is required to state a violation of the right of court access and the court is of the view that none of those cases support the D.C. Circuit's reliance on them. In *Crawford–El,* the court cited seven cases which it believed supported a specific intent requirement.[3] *Crawford–El,* 951 F.2d at 1318–19. However, in none of those cases did the courts hold that a specific intent was required. In four of those cases, the courts never even mentioned what state of mind was required.[4] The court will turn its attention to the three cases which remain.

---

**2.** Defendant Burke does not argue that deliberate indifference is the proper state of mind. Instead, defendant Burke has relied solely upon the specific intent to interfere as the appropriate state of mind. For this reason, the court will focus on whether a defendant's specific intent to interfere with litigation is a component of a plaintiff's right to court access cause of action.

**3.** The seven cases the court cited are: *Simmons v. Dickhaut,* 804 F.2d 182 (1st Cir.1986) (*per curiam*); *Wright v. Newsome,* 795 F.2d 964 (11th

Cir.1986) (*per curiam*); *Jackson v. Procunier,* 789 F.2d 307 (5th Cir.1986); *Washington v. James,* 782 F.2d 1134 (2d Cir.1986); *Carter v. Hutto,* 781 F.2d 1028 (4th Cir.1986); *Patterson v. Mintzes,* 717 F.2d 284 (6th Cir.1983); *Tyler v. "Ron" Deputy Sheriff,* 574 F.2d 427 (8th Cir.1978) (*per curiam*).

**4.** Those cases are: *Wright v. Newsome,* 795 F.2d 964 (11th Cir.1986) (*per curiam*); *Carter v. Hutto,* 781 F.2d 1028 (4th Cir.1986); *Patterson v. Mintzes,* 717 F.2d 284 (6th Cir.1983); *Tyler v.*

In *Simmons v. Dickhaut*, 804 F.2d 182 (1st Cir.1986) (*per curiam*), the plaintiff had alleged that the defendant prison officials had violated his right to court access when they failed to return his legal materials to him. *Id.* at 183. The plaintiff's factual allegations were as follows. The plaintiff had escaped from a Massachusetts prison in early July 1985. *Id.* at 184. Within three weeks, he was reincarcerated at a different prison from the one he had escaped. *Id.* Since he was in a new prison, he did not have his personal property or legal materials. *Id.* Over the next month, the plaintiff made four requests for his personal property and legal materials. *Id.* In the second request, he informed prison officials that he needed his legal materials for a case he had pending. *Id.* After the third request, the plaintiff was told that three large boxes were being held at his prior place of incarceration and that he could send someone to get them. *Id.* After his fourth request, the plaintiff sent someone to obtain the boxes but they did not contain his legal materials. *Id.*

The district court had granted the defendants' motion to dismiss. *Id.* at 183. The First Circuit reviewed the allegations in the complaint and concluded that they were "adequate to show an intentional deprivation of [the plaintiff's] right of access." *Id.* at 184. Because the allegations in the complaint were sufficient to state an intentional deprivation, the court had no occasion to decide whether something less than intentional conduct would be sufficient.[5] *Simmons* establishes that intentional conduct is *sufficient* to state a violation of the right to court access. *Simmons* does not establish that intentional conduct is *necessary* to state a violation of the right to court access. The D.C. Circuit failed to note the distinction between what is sufficient and what is necessary to state a violation of the right to court access. For this reason, the court concludes that *Sim-*

*mons* does not support the D.C. Circuit's conclusion that the specific intent to interfere with litigation is necessary to state a violation of the right to court access.

In *Jackson v. Procunier*, 789 F.2d 307 (5th Cir.1986), the plaintiff alleged that the defendants had delayed the mailing of an *in forma pauperis* petition which was related to his civil appeal in state court. *Id.* at 308. As a result of the delay, his appeal was dismissed by the state appellate court. *Id.* The district court construed the complaint as simply alleging a negligent mishandling of mail. *Id.* at 309. Since it construed the complaint in this manner, the district court was able to dismiss the claim pursuant to *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), because the plaintiff had a state tort post-deprivation remedy that provided sufficient procedural due process. *Id.* The Fifth Circuit reviewed the complaint and concluded that the district court had erred because the complaint alleged more than the negligent mishandling of mail.[6] *Id.* at 310, 311. Instead, the complaint alleged "that the mail officers deliberately held up Jackson's mail when they should reasonably have known that the delay would deprive him of his right of access to courts." *Id.* at 311. The court expressly declined to decide whether something less than intentional conduct would be sufficient to state a violation of substantive due process. *Id.* at 312.

In this court's view, *Jackson v. Procunier* does not support the proposition that, in order to hold a defendant liable for violating the right of court access, the plaintiff must prove that the defendant acted with the specific intent to deprive the plaintiff of court access. Instead, *Jackson* supports the proposition that the defendant must act or fail to act[7] intentionally but that the defendant

"*Ron*" *Deputy Sheriff*, 574 F.2d 427 (8th Cir. 1978) (*per curiam*).

5. The First Circuit later addressed this question in *Germany v. Vance*, 868 F.2d 9 (1st Cir.1989). The court held that reckless or callous indifference, which was less than intentional or willful conduct, would be sufficient to state a violation of a plaintiff's right to court access. *Id.* at 17–18.

6. The court expressly noted that, if the complaint had only alleged the negligent mishandling of mail, the district court's dismissal would have been proper. *Jackson*, 789 F.2d at 310.

7. By act or fail to act, the court means doing the thing complained of or failing to do the thing complained of. In *Jackson*, the act was delaying

need not have acted or failed to act with the specific intent to deprive the plaintiff of the right to court access. All that *Jackson* requires is that the plaintiff demonstrate that the defendant reasonably should have known that the act he intentionally performed would deprive the plaintiff of his right to court access. The court notes that the D.C. Circuit similarly construed *Jackson* in *Crawford–El* but nonetheless concluded that the specific intent to deprive was required. *Crawford–El,* 951 F.2d at 1318–19. The court agrees with the D.C. Circuit's apparent understanding of *Jackson* but the court respectfully does not agree that *Jackson* supports the rule announced in *Crawford–El.*

In *Washington v. James,* 782 F.2d 1134 (2d Cir.1986), the plaintiff alleged, *inter alia,* that the defendants had intercepted his outgoing legal mail in violation of his right to court access. *Id.* at 1136–37. The court articulated a broad definition of the right to court access: "A prisoner has a constitutional right of access to the courts for the purpose of presenting his claims, a right that prison officials cannot unreasonably obstruct and that states have affirmative obligations to assure." *Id.* at 1138 (citations omitted.) The court concluded that, in the case before it, the plaintiff had alleged that the defendants had intentionally violated his right of access to the courts. *Id.* at 1139.

In this court's view, *Washington v. James* stands for the proposition that negligent denial of the right of court access states a constitutional violation and that in *Washington,* the plaintiff had alleged an intentional denial, which is necessarily more than mere negligence. The D.C. Circuit never attempted to reconcile the rule announced by the Second Circuit, which does not require a specific intent, with its rule, which does. This court respectfully disagrees with the D.C. Circuit and concludes that *Washington v. James* does not support the rule announced in *Crawford–El.*

The rule announced in *Crawford–El* is inconsistent with *Bieregu* and has no support in this circuit. Further, it appears to have had no support among the other Circuit Courts of Appeal when it was announced in *Crawford–El.* In light of these observations, this court can not adopt the D.C. Circuit's rule. Because the court does not adopt the D.C. Circuit's specific intent rule, the court concludes that whether defendant Burke had the specific intent to deprive the plaintiff his right of access to the courts is not a material fact. Accordingly, defendant Burke cannot be granted summary judgment based on her specific intent argument.

Finally, the court is constrained to acknowledge that, after the defendants' summary judgment motion was filed, the parties and the court engaged in two telephone conferences. As a result of those conferences, defense counsel has provided the plaintiff with additional transcripts related to his criminal trial.[8] It now appears that the plaintiff has received every document he requested prior to filing his lawsuit. As such, his claim for injunctive relief is now moot. Because it is moot, there is no case or controversy with respect to this claim and the court will recommend the *sua sponte* dismissal of the claim for injunctive relief. The fact that the claim for injunctive relief is now moot does not affect the plaintiff's claim for damages as that is still a live case and controversy.

The court's recommendation follows.

#### RECOMMENDATION

AND NOW, this 23rd day of October, 1995, for the reasons given in the attached Report, it is hereby RECOMMENDED that defendant Burke's motion for summary judgment be DENIED and that defendant Miller's motion for summary judgment be GRANTED based on her lack of personal involvement in the alleged wrongful conduct. The court also RECOMMENDS, *sua sponte,*

the mailing of the *in forma pauperis* petition. In this case, the failure to act was the failure to provide the plaintiff with transcripts and other documents related to his criminal trial for over fifteen months.

**8.** In the exhibits attached to their motion for summary judgment, the defendants demonstrated that, after they filed the answer, court employees provided the plaintiff with most of the transcripts and documents he had requested prior to filing his lawsuit.

that the plaintiff's claim for injunctive relief be DISMISSED as moot.