James L. MARTIN, et al., Plaintiffs,

v.

Samuel I. KLINE, et al., Defendants.

No. 1:03 CV 922.

United States District Court,
M.D. Pennsylvania.

Nov. 6, 2003.

Don Bailey, Bailey, Stretton & Ostrowski, Harrisburg, PA, for Plaintiffs.

David M. Donaldson, Administrative Office of Pennsylvania Courts (AOPC), Philadelphia, PA, Adrienne C. Snelling, Sullivan, Sullivan & Snelling, Lebanon, PA, for Defendants.

## MEMORANDUM AND ORDER

JONES, District Judge.

Currently pending before this Court are Defendants' motions to dismiss. We have reviewed the submissions of the parties and taken into consideration the presentations made at oral argument. For the reasons set forth below, we will dismiss the action for lack of subject matter jurisdiction.

### PROCEDURAL HISTORY

James L. Martin, Ann L. Martin and Grace E. Martin (hereinafter collectively referred to as "Plaintiffs") filed a civil action pursuant to 42 U.S.C. § 1983 against the Honorable Samuel I. Kline (hereinafter

"Judge Kline"), a judge on the Court of Common Pleas of Lebanon County, Pennsylvania, and Lisa M. Martel, his court reporter (hereinafter "Defendant Martel"). The Plaintiffs claim that the Defendants have violated their First Amendment rights by their willful or negligent mishandling of a court transcript.

On July 9, 2003, Judge Kline filed a motion to dismiss based on lack of subject matter jurisdiction pursuant to the *Rooker–Feldman* doctrine, and for failure to state a claim for which relief can be granted based on a defense of judicial immunity. On August 5, 2003, Defendant Martel filed an identical 12(b)(1) motion, and a 12(b)(6) motion on "absolute quasi-judicial immunity"[1] grounds.

## BACKGROUND

On June 1, 2001, Judge Kline presided over a hearing in Lebanon County Orphans' Court division.[2] Defendant Martel was the court reporter, and in the course of her duties she later prepared a transcript. Plaintiffs subsequently submitted an "errata sheet" to Defendant Martel, alleging the existence of two errors in the transcript,[3] and received notice that the sheet had been filed.[4] The official

transcript, which does not contain the corrections requested by the Plaintiffs, was certified as complete and accurate by Defendant Martel and approved by Judge Kline.[5] According to the Plaintiffs, the court's failure to correct these errors was material to the underlying case.[6]

Though the procedural history of Plaintiffs' state litigation is unclear from their submissions, it is evident that Plaintiffs appealed what we assume was an adverse decision of the Orphans' Court and within their appeal raised the issue of the transcript's inaccuracies.[7] In addition, Plaintiff James L. Martin stated by sworn affidavit that the state litigation has been inactive for more than two years and that a decision on the merits was issued in favor of the Plaintiffs.[8]

## DISCUSSION

### Standard of Review

Defendants move to dismiss this action on Fed.R.Civ.P. 12(b)(1) and 12(b)(6) grounds. The threshold question for this Court is whether we have subject matter jurisdiction to decide the case,[9] and thus we first consider Defendants' 12(b)(1) motion.

---

1. Mot. to Dismiss at 1.

2. *In re: Estate of Josephine A. Martin, deceased,* Doc. No.1997–588.

3. TR at 2, 9.

4. Pl. Br. Opp'n. Def. Kline's Mot. to Dismiss at 2.

5. TR at 16.

6. Plaintiffs claim that "[b]y expressly approving the transcript the defendant Judge Kline has kept the issue of his lucidity and his inconsistent actions from being reviewed." Pl. Br. Opp'n. Def. Kline's Mot. to Dismiss at 3.

7. Pl. Br. Opp'n. Def. Kline's Mot. to Dismiss at 6. Further, Plaintiffs' brief makes the bald

assertion that "no state court so much as gave it a glace or entertained the issue at all." *Id.*

8. Martin Aff. ¶ 3.

9. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94–5, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) ("[W]ithout jurisdiction the court cannot proceed at all in any cause.") (quoting *Ex parte McCardle,* 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868)). *See also In Re Corestates Trust Fee Litigation,* 837 F.Supp. 104, 105 (E.D.Pa.1993) ("When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot.")

Rule 12(b)(1) motions fall into two categories: facial and factual challenges to subject matter jurisdiction. *Mortensen v. First Fed. Savings & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977). The standard for factual 12(b)(1) challenges differs from that of both facial 12(b)(1) challenges and 12(b)(6) motions:

> Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case-there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

*Id.* (citations omitted). *Accord Travis v. Miller*, 226 F.Supp.2d 663, 667 (E.D.Pa. 2002); *Daily v. Daily*, 96 F.Supp.2d 463, 466 (E.D.Pa.2000); *Altemose v. Charlestown Twp.*, No. 98–2862, 1999 WL 179759, *2, 1999 U.S. Dist. LEXIS 4135, at *5 (E.D.Pa. Mar. 23, 1999); *Adams v. Costello*, No. 96–4377, 1998 WL 242600, **2–3, 1998 U.S. Dist. LEXIS 6777, at *8–9 (E.D.Pa. May 13, 1998); *Perlberger v. Cirillo*, No. 96–6243, 1996 WL 684313, **1–2, 1996 U.S. Dist. LEXIS 17519, at *3 (E.D.Pa. Nov. 26, 1996); *Grand Fraternity Rosae Crucis v. Court of Common Pleas*, No. 95–731, 1995 WL 572912, **5–6, 1995 U.S. Dist. LEXIS 14096, at *15–16 (E.D.Pa. Sept. 27, 1995). *White v. Judicial Inquiry & Review Bd.*, 744 F.Supp. 658, 667 (E.D.Pa.1990).

Defendants base their 12(b)(1) motion on the *Rooker–Feldman* doctrine, thus raising a factual (rather than facial) challenge to subject matter jurisdiction. *See, e.g., McCurdy v. Esmonde*, No. 02–4614, 2003 WL 223412, *4, 2003 U.S. Dist. LEXIS 1349, at *11 (E.D.Pa. Jan. 30, 2003) (stating that, since *"Rooker–Feldman* turns on whether the issues were or could have been raised in the state court ... or whether [they] are inextricably intertwined with the state court judgment," the issues raised by the instant 12(b)(1) motion are fact-based.)

## Rooker–Feldman Doctrine

Under Article III of the Constitution and pursuant to relevant congressional statutes, federal district courts are courts of limited subject matter jurisdiction. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986); *Employers Ins. of Wausau v. Crown Cork & Seal Co.*, 905 F.2d 42, 45 (3d Cir.1990). "District Courts are granted original, not appellate, jurisdiction in most instances," *Ross v. Zavarella*, 732 F.Supp. 1306, 1314 (M.D.Pa.1990) (citing 28 U.S.C. § 1331), and "lower federal courts possess no power whatever to sit in direct review of state court decisions." *Port Auth. Police Benevolent Ass'n v. Port Auth. of New York*, 973 F.2d 169, 177 (3d Cir.1992) (quoting *Atlantic Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 296, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970)).[10]

The *Rooker–Feldman* doctrine dictates that lower federal courts cannot entertain constitutional claims that have been previously adjudicated in state court or that are inextricably tied to a state adjudication. "[F]ederal district courts lack subject matter jurisdiction to review

---

10. 28 U.S.C. § 1257, providing for review of state court decisions by writ of certiorari to the U.S. Supreme Court, is the exclusive procedure for federal review of state court judgments based on an alleged erroneous resolution of a claim or claims under constitutional or federal law.

601

final adjudications of a state's highest court or to evaluate constitutional claims that are 'inextricably intertwined with the state court's [decision] in a judicial proceeding.'" *Blake v. Papadakos,* 953 F.2d 68, 71 (3d Cir.1992) (quoting *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 483 n. 16, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)). *Accord Guarino v. Larsen,* 11 F.3d 1151, 1156 (3d Cir.1993). *See also Rooker v. Fidelity Trust Co. et al.,* 263 U.S. 413, 414, 44 S.Ct. 149, 68 L.Ed. 362 (1923) (holding that a losing state court litigant may not invoke federal jurisdiction to attack a state court judgment on the ground that the court had unconstitutionally misapplied state law).

■ In attempting to delineate which claims courts may determine to be "inextricably intertwined," the Court of Appeals for the Third Circuit was guided by Justice Marshall's insights in *Pennzoil v. Texaco Inc.:*

While the question of whether a federal constitutional challenge is inextricably intertwined with the merits of a state court judgment may sometimes be difficult to answer, it is apparent, as a first step, that the federal claim is inextricably intertwined with the state court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state court judgment.

*Centifanti v. Nix,* 865 F.2d 1422, 1430 (3d Cir.1989) (quoting *Pennzoil,* 481 U.S. 1, 25, 107 S.Ct. 1519 (1987) (Marshall, J., concurring)). In addition, the Third Circuit has stated that, as with the rules of claim preclusion, "[o]nce litigants' claims have been adjudicated in the state court system, they should not also have access to the

entire federal court system". *Guarino, supra,* at 1157. Concomitantly, "federal courts have no jurisdiction to review state officials' compliance with state law." *Blake, supra,* 953 F.2d at 73 n. 5.

■ *Rooker–Feldman* also prohibits federal district court review of the decisions of lower state courts:

[I]f federal district courts are precluded, as they are, from reviewing the decisions of a state's highest court, even when those decisions appear to the district court to have plainly been in violation of the Constitution, then federal district courts are certainly also precluded from reviewing decisions of lower state courts, which are subject to correction and modification within the state court system.

*Port Auth. Police Benevolent Ass'n, supra,* 973 F.2d at 177. Further, the doctrine applies to claims that could have been raised in state court. *Valenti v. Mitchell,* 962 F.2d 288, 296 (3d Cir.1992). Thus, if a party fails to raise his constitutional claim in state court, it is waived and cannot be raised in the lower federal courts. *Guarino, supra,* 11 F.3d at 1161–62 (holding that a state court judge had waived his constitutional claims by failing to raise them before the state's supreme court). " '[I]t is appropriate to presume that the state court would have been willing to decide [the Plaintiff's] constitutional claims subject to rebuttal by clear evidence to the contrary' [and][t]herefore Plaintiff waived his constitutional claims and this court is powerless to override his waiver." *Villela v. City of Philadelphia,* No. 95–1313, 2000 WL 1972, *4, 1999 U.S. Dist. LEXIS 19843, at *13 (E.D.Pa. Dec. 30, 1999) (quoting *Guarino,* 11 F.3d at 1156).

■ In the case at bar, Plaintiffs concede that they raised their claim that the trial court transcript contained errors within the appeal of their state court ac-

tion. Under Pennsylvania Rule of Appellate Procedure 126, the parties are to submit their disagreement with the record to the lower court for consideration; if errors persist, the appellate court "on proper suggestion or of its own initiative, may direct that the omission or misstatement be corrected...."[11] As previously noted, we have been provided with little procedural history of the underlying state adjudication. But because the Plaintiffs admit they raised the issue in the appellate court, we must assume that the court appropriately considered their objection to the trial court transcript and decided against making the requested alterations. If the Plaintiffs were dissatisfied with this outcome, they could and should have appealed the issue, along with any constitutional claims, to the state supreme court rather than to a federal district court. As the court stated in *Port Authority*, "[j]udicial errors committed in state courts are for correction in the state court systems, at the head of which stands the United States Supreme Court; such errors are no business of ours...." 973 F.2d at 177. In order for this Court to decide Plaintiffs claims, we would need to examine the decision of the Pennsylvania Superior Court in the underlying action, something that *Rooker–Feldman* plainly states we cannot do.

■ Plaintiffs claim that, because Judge Kline and court reporter Martel willfully or negligently failed to correct the transcript, they were deprived of their constitutional right to access to the courts. They bring this claim pursuant to Section 1983, and therefore must show that the Defendants' conduct in not correcting the transcript was both sanctioned under color of state law and amounted to a deprivation of a constitutional or federally protected right. *See Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 907 (3d Cir.1997). The deprivation claimed by the Plaintiffs in this case, violation of their right of access to the courts, was recognized by the Supreme Court in *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). The *Bounds* Court held that prisoners have a constitutional right to such access, and that it must be "adequate, effective, and meaningful." 430 U.S. at 821, 97 S.Ct. 1491. Though the Supreme Court did not cite a constitutional source for this right, the Third Circuit has held that "the First Amendment right to petition the government for redress of grievances is the proper source for the right of access to courts." *Johnson v. Miller*, 925 F.Supp. 334, 339–40 (E.D.Pa.1995), *adopted by* 925 F.Supp. 334 (E.D.Pa.1996) (quoting *Bieregu v. Reno*, 59 F.3d 1445, 1453–54 (3d Cir.1995)).[12]

In order to claim such a deprivation, Plaintiffs must also show that they were actually injured in order to maintain a cause of action under Section 1983. *See Johnson*, supra, at 339–41. The Third Circuit has repeatedly held that a plaintiff does not have a constitutional right to an error free transcript. *See, e.g., Tedford v. Hepting*, 990 F.2d 745, 747 (3d Cir.1993); *Carpenter v. Vaughn*, 296 F.3d 138, 155 (3d Cir.2002). In addition, "a constitutional violation would occur only if the inaccuracies in the transcript adversely affected appellate review in the state courts. The threshold question, therefore, is ... whether plaintiff has alleged deficiencies in the trial transcript substantial enough to call into question the validity of the appellate process in the state courts." *Carpenter, supra*, at 155 (quoting *Tedford, supra*, at 747). At oral argument of this matter

---

11. Pa.R.App.P.1926. In addition under Rule 1922, "[i]f objections are made the difference shall be submitted to and *settled by the trial court.*" Pa.R.App.P.1922 (emphasis added).

12. In *Bieregu*, the Third Circuit also found that the Due Process Clause of the Fourteenth Amendment is a proper source for the right of access to courts. 59 F.3d at 1454.

the Court requested that Plaintiffs' counsel provide information regarding the procedural posture of Plaintiffs' state court claim. The import of the question was obviously to determine whether the alleged errors in the transcript called into question the validity of the appellate process in the state courts. He was unable to do so with specificity, and in fact did not know whether it had concluded.[13] We then allowed the record to remain open for clarification, resulting in Plaintiffs' Exhibit "A" to Report/Supplementation to the Court, the affidavit of James L. Martin (doc. 30). Interestingly, the affidavit confirms that Plaintiffs prevailed in their underlying state action, and thus there is no indication that they suffered any harm whatsoever to their state claim via Defendants' alleged conduct. It is evident that Plaintiffs, in order to avoid *Rooker–Feldman's* application, now attempt to cast their claim as an independent action under Section 1983 unrelated to the procedural posture of the underlying case. In addition to their failure to establish any injury, the very fact that Plaintiffs raised the failure to correct alleged errors in the state proceeding points out why this tactic will not remove the application of *Rooker–Feldman* to this case.

Because we will dismiss plaintiff's complaint pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, we need not address Defendants' claims that dismissal is appropriate under Rule 12(b)(6) for failure to state a claim.[14]

For the reasons discussed above, it is clear that this Court lacks jurisdiction to preside over this matter. Accordingly, pursuant to Federal Rule of Civil Procedure 12(h)(3), this action will be dismissed.[15]

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendant Kline's motion to dismiss (doc. 8) is GRANTED for lack of subject matter jurisdiction.

2. Defendant Martel's motion to dismiss (doc. 12) is GRANTED for lack of subject matter jurisdiction.

3. The clerk is directed to close the case file.

---

13. Although Plaintiffs' counsel attempted to excuse his lack of knowledge about the procedural posture of Plaintiffs' state claim by stating that he was not counsel in that matter, we consider it to be astonishing, given the nature of the action before us, that counsel would not know if or how the underlying claim had resolved.

14. However, we believe that were we to consider fully the immunity claims raised by Defendants, they would provide a more than adequate basis to dismiss Plaintiffs' action. *See, e.g., Gallas v. Supreme Court of Pennsylvania,* 211 F.3d 760, 769–70 (3d Cir.2000) (stating that judges have absolute immunity for their actions if 1) they are those normally performed by judges and 2) the parties dealt with the judge in his judicial capacity, and notwithstanding the fact that the actions were taken in error, done maliciously, or were in excess of his authority) (citations omitted); *Davis v. Philadelphia County, et al.,* 195 F.Supp.2d 686, 689 (E.D.Pa.2002) (holding that quasi-judicial immunity applies to court staff, such as clerks of judicial records and court reporters, who are acting in their official capacities) (citation omitted).

15. Fed.R.Civ.P.12(h)(3) states that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."